Joyce NADEAU f/k/a Joyce Recker

v.

RAINBOW RUGS, INC.

Supreme Judicial Court of Maine.

Argued Jan. 3, 1996.

Decided May 7, 1996.

Joyce A. Oreskovich (orally), Portland, for Plaintiff.

Robert E. Mongue (orally), Kennebunk, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Defendant, Rainbow Rugs, Inc. ("Rainbow"), appeals from the judgment entered in the Superior Court (Cumberland County, *Mills, J.*) following a jury-waived trial finding Rainbow liable for unlawful sexual harassment in violation of 5 M.R.S.A. § 4572 (Pamph.1995). Rainbow contends that the court erred in finding that one incident of harassment created a hostile work environment. Rainbow further contends that even if a hostile work environment was created, it should not be held liable for the unauthorized acts of its employee. Finally, Rainbow challenges the award of attorney fees. Finding no error in the court's determination that a hostile work environment existed and its award of attorney fees, we affirm the judgment.

The facts presented at the trial may be summarized as follows. Plaintiff Joyce Nadeau worked as an administrative assistant at Rainbow's office, which was located in the Kennebunk home of Jere Scola, the president of Rainbow Rugs. Scola's wife also worked in the office as the manager. Nadeau and Scola worked in the same room and he supervised all of her work. Scola was the

highest ranking employee of Rainbow in the United States. Rainbow's Board of Directors were residents of Belgium.

In June 1991 Nadeau's husband left her. Without her husband's income, her job at Rainbow was the only source of support for her and her three children. Nadeau's distress over her family difficulties was visible at work. Scola asked her to accompany him on a few short car trips from the office to Rainbow's warehouse, which was preparing to open for business, and on the trips he asked her personal questions about her marriage and her financial situation. Nadeau testified that she felt intimidated by Scola and that the questioning made her feel uncomfortable.

One month after Nadeau's husband left her, Scola again questioned Nadeau about her financial situation. She told him that she was receiving public assistance but was having difficulty making ends meet. He suggested that there were other options available to her but that he needed some time alone with her to discuss them. Nadeau testified that this suggestion provided her with a "glimmer of hope" that he had legitimate business ideas for improving her financial situation. The next day Scola asked Nadeau to lunch and she accepted his invitation based on their discussion the previous day.

At lunch he discussed his own marital difficulties and then suggested that they leave the restaurant. On the way back to Rainbow's warehouse he told Nadeau that he had tested negatively for AIDS and then offered to give her money in exchange for sex. He told her that he could fly her to any city, give her money for shopping, and pay to have her hair done. He told her he did not love her and that he had no intention of leaving his wife—the affair would simply be a "hobby." Because Scola's wife also worked in the office, he told Nadeau that she would have to act "cold" so that his wife would not suspect anything.

Nadeau immediately rejected the proposal. Scola told her that her refusal would not jeopardize her position and that she could continue to work at the office. He asked her to let him know if she changed her mind.

She worked at the warehouse for the rest of the day and she reported the incident to Cindy Staples, a friend and supervisor of the warehouse. She did not report the incident to anyone else because Scola was her only supervisor. Rainbow had no personnel policies, no policy regarding sexual harassment, and no complaint procedures for employees. Later in the day Scola returned and asked Nadeau to lie about having lunch with him because his wife was angry when she learned that they had gone out together. Nadeau called in sick the next two days and then sent a letter of resignation. She testified that she could no longer work there because Scola's actions made her feel like a "slut" and because she felt that he would be looking at her as though she were "naked."

She filed a complaint with the Human Rights Commission and ultimately the Commission issued a finding that there were reasonable grounds to believe that unlawful discrimination had occurred. Thereafter she brought this action pursuant to 5 M.R.S.A. § 4572(1)(A) (Pamph.1995), claiming that the harassment caused her work environment to become hostile. The court ruled that she had met the objective and subjective standards for sexual harassment claims enunciated by the United States Supreme Court in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The court determined that this was a rare and extreme case and that "in light of the record as a whole and the totality of the circumstances" Scola's conduct created a hostile work environment.

The court also ruled that Rainbow, as the employer of Scola and Nadeau, was liable for Scola's misconduct, adopting the reasoning of *Harris v. International Paper Co.*, 765 F.Supp. 1509, 1516 (D.Me.1991) ("Employers are liable for hostile environment harassment both by their supervisors and by the victim's co-workers if 'an official representing that institution knew, or in the exercise of reasonable care, should have known, of the harassment's occurrence, unless that official can show that he or she took appropriate steps to halt it.'" (citations omitted)). Nadeau was awarded back pay, attorney fees pursuant to 5 M.R.S.A. § 4614, and damages in the

amount of $1,000 pursuant to 5 M.R.S.A. § 4613(2)(B)(7).

■ In this case we consider whether one instance of sexual harassment may create a hostile working environment. The leading cases on the standard for hostile environment sexual harassment are *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) and *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). *Harris* reaffirmed *Meritor's* standard that discriminatory behavior that is sufficiently severe or pervasive creates a hostile or abusive working environment. The standard requires an objectively hostile or abusive environment— one that a reasonable person would find hostile or abusive—as well as the victim's subjective perception that the environment is abusive. *Harris*, 510 U.S. 17, ——, 114 S.Ct. 367, 370. Rainbow contends that the single instance of sexual harassment at issue is not sufficiently severe to meet the *Meritor* and *Harris* standard. Rainbow posits that because *Meritor* and *Harris* involved repeated instances of harassment, the standard for harassment requires that the conduct occur more than once.

■ Although Rainbow is correct that *Meritor* and *Harris*—and indeed many of the cases considering hostile environment harassment claims—involve a pattern of inappropriate conduct, there is no requirement that harassment occur more than one time in order to be actionable. The standard contemplates conduct that is either severe or pervasive. Although the conduct may be both, only one of the qualities must be proved in order to prevail. The severity of the conduct may vary inversely with its pervasiveness. Whether the conduct is so severe as to cause the environment to become hostile or abusive can be determined only by

considering all the circumstances, and this determination is left to the trier of fact. *Harris*, 510 U.S. at ——, 114 S.Ct. at 371; *Meritor*, 477 U.S. at 69, 106 S.Ct. at 2406.

■ In this case the trier of fact focused on the following unique circumstances. Nadeau and Scola shared an office in his home and his wife occupied the office adjacent to theirs. Scola was Nadeau's only supervisor. Although Scola told her that her employment terms would not change when she rejected his sex-for-money proposal, he made it clear that the offer continued. He attempted to take advantage of her financial situation and to exploit her vulnerability.

It was difficult for Nadeau to put an end to the matter or to express her disapproval because Scola instructed her to ignore him at the workplace and to lie to his wife. We reject Rainbow's argument that his conduct did not, as a matter of law, create an objectively hostile environment because Nadeau could return to work. The court found, and we agree, that a reasonable person could find Scola's conduct to be sufficiently severe to alter the conditions of employment and to create an abusive or hostile work environment.

■ Rainbow contends next that it cannot be held liable for Scola's conduct. We have not previously addressed the issue of employer liability[1] for hostile environment sexual harassment and neither *Meritor* nor *Harris* enunciated a definitive rule on employer liability.[2] Instead the United States Supreme Court has stated that agency principles should provide guidance.[3] *Meritor*, 477 U.S. at 72, 106 S.Ct. at 2408.

The court referred to both *Meritor* and *Harris v. International Paper Co.*, 765 F.Supp. 1509, 1516 (D.Me.1991) in its decision and concluded that employers are liable for hostile environment harassment by su-

---

1. Section 4553(4) defines employer, in part, as "any person in this State employing any number of employees ... and any person outside this State employing any number of employees whose usual place of employment is in this State; any person acting in the interest of any employer, directly or indirectly...." It is unlawful for any "employer" to discriminate against an applicant for employment on the basis of sex. 5 M.R.S.A. § 4572(1)(A).

2. *Meritor* did reject strict liability for employers for hostile environment claims. *Meritor*, 477 U.S. at 69–72, 106 S.Ct. at 2406–08.

3. The Supreme Court did not address the issue of employer liability in *Harris v. Forklift*.

pervisors and co-workers if "an official representing that institution knew, or in the exercise of reasonable care, should have known, of the harassment's occurrence, unless that official can show that he or she took appropriate steps to halt it." (quoting *International Paper*, 765 F.Supp. at 1516). The court found that Scola was an official representing Rainbow and that he obviously knew of the occurrence because he had caused it. The only step he could have taken to stop the harassment would have been "to rescind his proposition" but instead he left his offer open in case Nadeau changed her mind.

Rainbow contends that the notice requirement of *International Paper* was not satisfied because no one other than the perpetrator himself was notified of Nadeau's objection to Scola's conduct. Rainbow contends that the court's holding unfairly creates liability for employers by automatically satisfying the notice requirement when the perpetrator is the supervisor. We disagree.

Scola was the only supervisor Nadeau had and he was president of the company. This unique context created a situation where there was no one else for Nadeau to consult. There was no office harassment policy in place that Nadeau could have used to seek redress. The only officials higher in authority than Scola were located in Belgium and Nadeau had never had contact with them. The court's ruling reflects consideration of all of these factors.

Pursuant to 5 M.R.S.A. § 4614 (Supp.1994) the court awarded attorney fees to Nadeau. Rainbow argues that Nadeau's attorney bills were not sufficiently detailed and that Rainbow should not be charged for any fees incurred in the preliminary action before the Human Rights Commission.

█ A court's determination on an award of attorney fees is reviewed for an abuse of discretion. *McCain Foods, Inc. v. Gervais*, 657 A.2d 782, 784 (Me.1995). Copies of Nadeau's attorney bills reflect time spent on each task and in the case of telephone calls, the person to whom counsel was speaking. We accord great deference to a trial court's award of fees and there is no

basis for finding that the bills were not sufficiently detailed.

█ Rainbow's second argument relates to a limitation on attorney fees in the Human Rights Act. Section 4622(1)(B) provides, in part, that no fees may be awarded:

> to a plaintiff *in a civil action under this Act* unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the commission and the commission ... [f]ailed, within 90 days after finding reasonable grounds to believe that unlawful discrimination occurred, to enter into a conciliation agreement to which the plaintiff was a party.[4] (emphasis added).

5 M.R.S.A. § 4622(1)(B). Rainbow argues that fees for the action before the Commission cannot be assessed against it because the proceeding before the Commission is not a "civil action." Nadeau argues that the statute merely sets forth the requirements for collecting fees, which she has complied with, and does not limit fees to those incurred once the civil action is initiated.

Nadeau's argument is consistent with the discretionary nature of an award of fees pursuant to the act. Because the statute does not specifically exclude an award of attorney fees for the very action that is required before any fees may be collected, we conclude that such fees are recoverable.

The entry is:

Judgment affirmed.

All concurring.

---

**4.** The parties stipulated that Nadeau satisfied the requirements of section 4622(1)(B).