STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
KENNEBEC, ss.                                     DOCKET NO. CV-02-206
                                                  DHM - KEN- 3/22/2004


VIRGINIA BLAKE,

        Plaintiff

    v.                                            DECISION AND ORDER

STATE OF MAINE,                    DONALD L. GARBRECHT
                                        LAW LIBRARY
        Defendant
                                      MAY 11 2004

        This matter is before the court on motion for summary judgment by defendant, State of

Maine. In this case, Blake has brought a complaint against the State under the Maine

Whistleblowers' Protection Act (WPA), alleging that the State, mainly through its supervisor

Curtis Johnson (Johnson), has caused her severe emotional distress, humiliation, embarrassment,

and loss of reputation. Blake was employed as a mental health/mental retardation case worker

with the Department of Behavioral and Developmental Services (BDS), working out of her home

in Lubec, Maine, at first, then out of the Machias office. In May of 2001, Johnson was assigned

to supervise Blake. Disputes between Johnson and Blake followed, which eventually lead to

counseling of Blake by Johnson and another supervisor at BDS. Blake claims that Johnson

created a hostile work environment that caused her to resign from her position with BDS and the

State.

        A motion for summary judgment is granted when there is no genuine issue of material

fact presented by one party. *See* M.R. Civ. P. 56. The Superior Court views the evidence in the

light most favorable to the nonmoving party, and "the plaintiff bear[s] the burden of making a

prima facie showing of each element [of their claim] in order to defeat summary judgment."

*Brawn v. Oral Surgery Assoc.*, 2003 ME 11, ¶15, 819 A.2d 1014, 1022-23. As stated by the Law Court:

> Summary judgment will be upheld if the evidence produced demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. To survive a defendant's motion for summary judgment, a plaintiff must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law. A fact is material when it has the potential to affect the outcome of the suit. An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial. Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact.

*Kenny v. Dep't Human Serv.*, 1999 ME 158, ¶3, 740 A.2d 560, 561.

The Law Court has dealt with cases where an employee allegedly suffers an adverse employment action. *See, e.g., DiCentes v. Michaud*, 1998 ME 227, ¶10, 719 A.2d 509, 513. The Law Court has stated where an employee does not have another cause of action the employee should receive redress through the Maine Human Rights Act. 5 M.R.S.A. § 4572. In her amended complaint, the plaintiff has not requested relief under the Maine Human Rights Act.

The cause of action is then guided under the standards of the WPA. *See DiCentes*, 1998 ME 227, ¶14, 719 A.2d 509. Under the WPA, the employee must show

(1)     that she engaged in activity protected by the WPA,
(2)     that she experienced an adverse employment action, and
(3)     that a causal connection existed between the protected activity and the adverse employment action.

*Id.* The trial court, in cases where there is no direct evidence of discrimination, should use the shifting burdens analysis articulated in *McDonnell Douglas v. Green*, 411 U.S. 792; 93 S.Ct. 1817 (1973); 36 L.Ed.2d 668.[1]

---

[1] In a recent case, the Law Court described this burden-shifting analysis. Once the employee has established the elements of the WPA, the burden shifts to the defendant to "articulate a legitimate,

The Law Court has also recently pronounced the standards for what constitutes a hostile work environment. *Doyle v. Dep't Human Serv.*, 2003 ME 61, ¶¶23-24, 824 A.2d 48, 57. "Hostile environment claims involve repeated or intense harassment sufficiently severe or pervasive to create an abusive working environment." *Id.* at ¶23. The court should consider "all the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Furthermore, when determining whether there is a hostile environment, the severity may be inversely proportional to the frequency of discriminatory conduct. *Id.*; *Nadeau v. Rainbow Rugs, Inc.*, 675 A.2d 973, 976 (Me. 1996).

Plaintiff alleges that she reported to the DBDS advocate, James Barnes, that Curtis Johnson had purchased cigarettes through mail order in a manner that illegally commingled client fund with other client funds, illegally commingled clients' funds with his mother's fund and short changed clients in favor of his mother. She further alleges that Curtis Johnson was aware that the plaintiff had reported her concerns about tobacco orders to the Public Advocate. She alleges that Johnson admitted that he had consumers' tobacco orders sent to his mother's mailing address, that he commingled his mother's tobacco order with consumer order on at least one occasion and that he knew it was not accepted practice to commingle a consumer's order with a personal order. Plaintiff alleges that subsequent to her reporting the situation to the advocate, Johnson's supervisor issued a memorandum instructing the staff to discontinue tobacco purchases and she counseled Johnson. However, no record was made of such counseling.

---

nondiscriminatory reason for the adverse employment action." *Doyle v. Dep't Human Serv.*, 2003 ME 61, ¶15, 824 A.2d 48, 55. If the defendant can establish a legitimate, nondiscriminatory reason, then the burden shifts back to the employee to prove that the reason was pretextual. *Id.*

Plaintiff further claims that Johnson met with her in a private meeting wherein he became threatening and demanded that she no longer report any issues to the Public Advocate. Ms. Blake states she became frightened by Mr. Johnson's "body language, demeanor and his demand that she should not contact the Advocate." She also became concerned about retaliation.

The plaintiff sent a memorandum to Johnson's supervisor complaining of Johnson's treatment of clients. Plaintiff asserts that when she tried to discuss her concerns with Johnson, "he stood up from his chair, glared at her and told her that he did not need her permission to meet with her client." Ms. Blake found this behavior intimidating. Ms. Blake met with one Deborah Henderlong who discussed Curtis Johnson's supervisory practices but nothing came of it. Ms. Blake complains of an alleged incident of Mr. Johnson's handling of a report of suspected abuse of a client. She says that Mr. Johnson treated her in a rude and disrespectful manner when he spoke to her about her use of the bulletin board for union activities. Ms. Blake complains that "Mr. Johnson frequently avoided" the plaintiff and "looked at me with disdain." Ms. Blake complains of a "very threatening" encounter with Mr. Johnson over Ms. Blake's reporting that a doctor had been treating patients without the State's consent. Ms. Johnson was late in filing Ms. Blake's performance evaluation, potentially delaying receipt of a salary increase.

In this case, the State argues that Blake cannot establish that she was discriminated against and that her actions were protected by the WPA as a matter of law.[2] The State argues that the counseling which occurred was not an adverse employment action. The State also argues that the transfer of clients was not an adverse employment action. The State further argues that a hostile work environment was not created by Johnson, and that although he was an

---

[2] The State also argues that Blake may not proceed under the WPA alone, because the WPA does not provide a private cause of action. The State argues that the plaintiff must amend her complaint to reflect that her cause of action stems from the Maine Human Rights Act.

inexperienced supervisor, none of his actions rise to the level of creating a hostile work environment. The State also argues that to the extent any action is deemed to be adverse, the State had legitimate non-discriminatory reasons for taking those actions, and that there was no evidence of pretext. Finally, the State argues that it is entitled to an affirmative defense under *Ellerth-Faragher*.[3]

Blake counters that her actions were of the kind protected by the WPA. Blake also contends that the hostile work environment created by Johnson would establish the adverse employment action element of the WPA. She claims that this work environment was created by Johnson, and that the counseling and reassigning of her clients constituted part of the hostile work environment. Blake argues that no legitimate reasons are given for the hostile work environment, and even if there were, these reasons are pretextual. Blake also argues that the State is not entitled to the affirmative defense under *Ellerth-Faragher* because the State did not address Johnson's behavior, and Blake had attempted to use internal methods to resolve her problems.[4]

In this case, Blake has established that there is an issue of material fact as to whether there were acts protected by the WPA. Blake relates four actions which may arguably be protected by the WPA. The first is the report of improper practice related to tobacco purchases. Second is the alleged improper client interaction between Johnson and Blake's clients. Third, Blake relates that Johnson failed to report suspected abuse by Johnson. Fourth, Blake claims that

---

[3] *Faragher v. City of Boca Raton*, 524 U.S. 775; 118 S.Ct. 2275; 141 L.Ed.2d 662. *Burlington Industries. v. Ellerth*, 524 U.S. 742; 118 S.Ct. 2257; 141 L.Ed.2d 633.

[4] The parties' submissions for this summary judgment motion are problematic under the Maine Rules of Civil Procedure. The submission for the statements of material facts is neither short nor concise as required by Rule 56(h).

her report of improper conduct by providers constitutes a protected act. Although not each of these is a strong case for protected actions, they would withstand summary judgment.

Blake has failed, however, to establish the second and third elements of a WPA claim. Generally, to constitute an adverse employment action, the conduct must "adversely affect the employee's compensation, terms or other conditions of employment." *DiCentes*, 1998 ME 227, ¶21, 719 A.2d 509. In this case, there was no adverse action, only corrective actions such as counseling. Other decisions were made, such as transferring clients, based on managerial reasons. Further, the plaintiff has failed to establish a causal connection between the protected acts and adverse employment action, if any. The record reveals that Blake and Johnson did not get along and had serious disagreements about their employment positions, but no connection between any protected act and adverse actions. Therefore, no genuine issue of material fact has been generated by the plaintiff.

Blake claims, nevertheless, because there was a hostile work environment, she is not required to meet the analysis from *DiCentes*. As noted above, Blake must show repeated or intense harassment.[5] The record reveals disagreement between Blake and Johnson, but no severe or intense harassment. The record does not reveal physical threatening or humiliating behavior on the part of Johnson, and no discriminatory conduct. The record shows attempts by each party to reconcile, and does not show pervasive conduct. *See, e.g., Doyle*, 2003 ME 61, ¶24, 824 A.2d 48.

In *Doyle*, the plaintiff was required to have special accommodation because she did not have a rectum or a colon. 2003 ME 61, ¶3, 824 A.2d 48. The supervisor made a comment about the plaintiff going to the restroom so that she would not have to "clean

---

[5] Courts analyze whether there was an objectively hostile environment using a reasonable person standard, as well as from the victim's subjective perspective. *Nadeau*, 675 A.2d at 976.

it up." *Id.* at ¶6. The Law Court held that although the comment "may have been offensive and in poor taste," it was not pervasive or severe enough to find a hostile environment. *Id.* at ¶25. Similarly, the severity in this case does not meet the range of intensity to establish a hostile environment under Maine law. *See Nadeau,* 675 A.2d 973. In *Nadeau,* the supervisor offered to pay the plaintiff for sex. *Id.* at 975. The Law Court affirmed the trial court's ruling, finding that despite the isolated incident, the occurrence was so intense that a hostile environment was created. *Id.* at 976. In the present case, the conduct of the supervisor barely raises an eyebrow, much less reaches the level of intensity required to create a hostile environment. Another case involving a similar issue is *Lee-Crespo v. Schering-Plough,* 354 F.3d 34 (1st Cir. 2003). In that case a supervisor was involved in numerous acts, ranging from gossip to insults to complements, with the plaintiff. The First Circuit in that case held that the conduct did not amount to pervasive harassment. *Id.*

The conduct in this case does not seem to rise to the level of that in *Doyle,* where the supervisor in that case made an offensive comment about the plaintiff's intestinal problems. Despite Blake's subjective feelings of intimidation, there is no objective evidence in the statements of fact that would lead a reasonable person to believe that there was a hostile environment.[6] The plaintiff has failed to show an issue of material fact regarding hostile work environment.

The State argues that it is entitled to an affirmative defense under the *Ellerth* and *Faragher* cases. It is not clear that this defense has application in Maine state courts. The Law

---

[6] As examples of harassing behavior creating a hostile environment, Blake cites, *inter alia,* to instances where Johnson stood up and glared, (saw Blake's clients, and "innuendos, insincerity, and feigned kindness." Although the supervisor in this case may not have been civil to Blake, the Maine Human Rights Act should not be a legally enforced civility code. *See Faragher v. Boca Raton,* 524 U.S. 775, 788 (1998).

Court has not specifically adopted this defense, and as the plaintiff has not been able to establish a hostile environment, it is unnecessary to treat this defense in this case. The Law Court has analyzed cases involving the WPA under the *DiCentes* case, using the burden-shifting analysis. As stated above, the plaintiff has not generated an issue of material fact.

To the extent that the *Ellerth-Faragher* affirmative defense should be considered, this defense consists of two prongs. First, the employer must demonstrate that it used reasonable care to prevent and correct any harassment. *Reed v. MBNA Marketing Sys., Inc.*, 333 F.3d 27, 32 (1st Cir. 2003). Second, the employer must establish "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* In this case, the State was able to demonstrate that there were protections, such as postings regarding the WPA, which the plaintiff was aware. The second prong of this test, however, is more difficult for the employer to prove in this case because it "creates a loophole for false or overstated claims of threat by one hoping to reach a sympathetic jury." *Reed*, 333 F.2d at 37. The First Circuit holds that a jury or factfinder would generally need to judge the reasonableness of any failure by the plaintiff. *Id.* This case, however, turns on whether a hostile environment is created, and not the affirmative defense.

For the reasons stated herein, the entry will be:

> Defendant's motion for summary judgment is GRANTED; judgment for the defendant on plaintiff's complaint.

Dated: March 22, 2004

Donald H. Marden
Justice, Superior Court

VIRGINIA BLAKE   - PLAINTIFF
RR 2 BOX 4250
LUBEC ME 04652
Attorney for: VIRGINIA BLAKE
BRETT D BABER
LAW OFFICE OF BRETT D. BABER PA
304 HANCOCK ST, SUITE 2E
BANGOR ME 04401


vs
STATE OF MAINE - DEFENDANT


Attorney for: STATE OF MAINE
SUSAN HERMAN
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2002-00206


**DOCKET RECORD**


Filing Document: COMPLAINT                    Minor Case Type: CONSTITUTIONAL/CIVIL RIGHTS
Filing Date: 10/07/2002

## Docket Events:

10/07/2002 FILING DOCUMENT - COMPLAINT FILED ON 10/07/2002

10/07/2002 Party(s):  VIRGINIA BLAKE
          ATTORNEY - RETAINED ENTERED ON 10/07/2002
          Plaintiff's Attorney: BRETT D BABER

10/07/2002 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 10/07/2002
          MAILED TO ATTY. OF RECORD.

10/25/2002 Party(s):  STATE OF MAINE
          SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP FILED ON 10/25/2002

10/25/2002 Party(s):  STATE OF MAINE
          SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 10/21/2002
          SUSA HERMAN, AAG FOR THE STATE OF MAINE

10/25/2002 Party(s):  STATE OF MAINE
          ATTORNEY - RETAINED ENTERED ON 10/25/2002
          Defendant's Attorney: SUSAN HERMAN

11/13/2002 Party(s):  VIRGINIA BLAKE
          SUPPLEMENTAL FILING - AMENDED COMPLAINT FILED ON 11/13/2002
          Plaintiff's Attorney:  BRETT D BABER

11/15/2002 Party(s):  STATE OF MAINE
          RESPONSIVE PLEADING - ANSWER TO AMENDED PLEADING FILED ON 11/15/2002
          Defendant's Attorney: SUSAN HERMAN
          DEFENDANT, STATE OF MAINE'S ANSWER TO FIRST AMENDED COMPLAINT.

11/18/2002 ORDER - SCHEDULING ORDER ENTERED ON 11/18/2002
          DONALD H MARDEN , JUSTICE