STATE OF MAINE　　　　　　　　　　　SUPERIOR COURT
KENNEBEC, ss　　　　　　　　　　　　Docket No.: 11-CV-068

　　　　　　　　　　　　　　　　　　　CN- KEN-1/4/2013

LINWOOD HALL,　　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　　　Plaintiff,　　　　　　　）
　　　　　　　　　　　　　　　　）
v.　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　）　　　**DECISION AND ORDER**
　　　　　　　　　　　　　　　　）　　　(Motion for Summary Judgment)
MID-STATE MACHINE PRODUCTS, et ）
al.,　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　　　Defendants　　　　　　）

This matter is before the Court on the Motion for Summary Judgment of Defendants

Mid-State Machine Products and Precision Partners Holding Company (PPHC) in this action

through which Plaintiff Linwood Hall seeks to recover under the Maine Whistleblower

Protection Act (MWPA).

## FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are not in dispute. Plaintiff worked for

Defendants from February 23, 1989 until April 6, 2009. (Supporting Statement of Material Facts

(S.S.M.F.) ¶ 6; Opposing Statement of Material Facts (O.S.M.F.) ¶ 6; Additional Statement of

Material Facts (A.S.M.F.) ¶ 8.) In 2007, Mid-State promoted Plaintiff to the position of

Finishing Department Supervisor, and he served in that position for the remainder of his

employment. (S.S.M.F. ¶ 6; O.S.M.F. ¶ 8.)

In 2009, Plaintiff supervised approximately twenty people, including Randy McGahey,

Evans Lister, and Levi Mosher. (S.S.M.F. ¶ 7; O.S.M.F. ¶ 7.) Plaintiff's duties required him to

ensure that the Finishing Department functioned properly, and also included the monitoring of employee conduct and enforcing the company's anti-harassment policy. (S.S.M.F. ¶ 8; O.S.M.F. ¶ 8.) Plaintiff's responsibilities included: to address and stop inappropriate employee conduct, to ensure that his subordinates treated each other with respect, and to report inappropriate workplace misconduct—including harassment and other threatening behavior—to his supervisor and other company officials. (S.S.M.F. ¶¶ 8-9; O.S.M.F. ¶¶ 8-9.) During the six months prior to Plaintiff's termination, Plaintiff received two raises, one of which was merit-based. (A.S.M.F. ¶ 12; Reply Statement of Material Facts (R.S.M.F.) ¶ 12.)

Since 2006, while on breaks at work, McGahey, Lister, and Mosher, along with other men in the Finishing Department, would make jokes and tease each other around the workplace.[1] (S.S.M.F. ¶ 11; O.S.M.F. ¶ 12; A.S.M.F. ¶ 20.) Some of these comments were sexual in nature; Lister and Mosher reportedly told McGahey that he needed to perform certain sexual acts, that he was a child molester, and that he was a homosexual. [2] (S.S.M.F. ¶¶ 12-13.)

Plaintiff was present when Lister and Mosher directed sexual comments to McGahey, but believed that the conversations were consensual, and that nobody was being harassed. (S.S.M.F. ¶¶ 14, 16-17; O.S.M.F. ¶¶ 14, 16-17; A.S.M.F. ¶¶ 20-21, 25.) Plaintiff also concedes that Lister's and Mosher's comments and conduct were lewd, dirty, vulgar, and disrespectful. (S.S.M.F. ¶ 17; O.S.M.F. ¶ 17.)

Mid-State is a Maine-based company that manufactures precision machine and fabricated metal parts. (S.S.M.F. ¶ 1; O.S.M.F. ¶ 1.) PPHC is a global manufacturing and engineering

---

[1] This statement of material fact, like several to follow, was qualified by the Plaintiff in his Opposing Statement of Material Facts. (O.S.M.F. ¶ 11.) Unless otherwise noted, the qualification serves merely to expand upon the original statement of material fact or the additional statement of material fact, and does not affect the underlying acknowledgment as to the basic truth of the statement.

[2] Plaintiff qualifies by stating that while he does not disagree that such statements were made, he contends that he did not participate in any of these inappropriate conversations. (O.S.M.F. ¶ 13.)

2

company that became Mid-State's parent corporation in 1998. the two companies maintain separate organizations structures, though. (S.S.M.F. ¶ 2; O.S.M.F. ¶ 2.) Mid-State has an Employee Handbook that prohibits harassment in any form, and PPHC's Code of Conduct similarly includes anti-harassment and mistreatment of co-workers policies. (S.S.M.F. ¶ 3; O.S.M.F. ¶ 3.)

Plaintiff received a copy of the anti-harassment and misconduct policy and also received annual training on how to implement company policies.[3] (S.S.M.F. ¶ 5; O.S.M.F. ¶ 5.) Plaintiff claims that on or about March 23, 2009, McGahey came to him and asked him to put a stop to Lister and Mosher's teasing. (S.S.M.F. ¶ 22; O.S.M.F. ¶ 22; A.S.M.F. ¶ 40.) It was then that Plaintiff subsequently approached his supervisor, David Mills, to inform him that McGahey was being teased. (S.S.M.F. ¶¶ 22-23; O.S.M.F. ¶¶ 22-23; A.S.M.F. ¶ 33.) At that time, Plaintiff did not disclose to Mills that the comments were sexual in nature, but Mills instructed Plaintiff to put a stop to the teasing. (S.S.M.F. ¶¶ 24-25; O.S.M.F. ¶¶ 24-25; A.S.M.F. ¶¶ 43, 45.) Mills instructed Plaintiff to tell McGahey, Lister, and Mosher not to have any non-work related discussions with each other. (S.S.M.F. ¶ 25; O.S.M.F. ¶ 25; A.S.M.F. ¶ 46.)

On March 26 or 27, 2009,[4] Jerry Fitzmorris, a welding supervisor and Plaintiff's peer, overheard two employees discussing the sexual comments that Lister and Mosher had made to McGahey.[5] (S.S.M.F. ¶ 27; O.S.M.F. ¶ 27.) Fitzmorris asked one of the employees', Russ Simpson, what was going on in the Finishing Department; Simpson explained that Lister and

---

[3] The parties dispute the origin of the notification regarding workplace sexual harassment; Defendants assert that there is no indication that such notice came from PPHC. (R.S.M.F. ¶ 30.)

[4] The parties do not necessarily agree on the date of Fitzmorris' report; although this is not a material fact in dispute, Defendants assert that Fitzmorris approached Plaintiff on March 27, 2009, not March 26, 2009. (A.S.M.F. ¶ 55; R.S.M.F. ¶ 55). Both proffered dates are supported by evidence in the record, but since the date on which Fitzmorris approached Plaintiff does not go to the underlying issue of whether Hall took appropriate action in a timely manner to address the alleged harassment, the apparent disagreement is not a dispute of a material fact.

[5] The parties agree that Russ Simpson, one of the two employees having the discussion, reports to Fitzmorris. (S.S.M.F. ¶ 27; O.S.M.F. ¶ 27.)

Mosher had been making harassing and sexual comments to McGahey, which included comments about McGahey's sexuality, McGahey performing sexual acts, and asserting that McGahey was a child molester. (S.S.M.F. ¶ 28; O.S.M.F. ¶ 28.) Fitzmorris then approached Plaintiff to advise him that Plaintiff had a problem in his department, and if Plaintiff did not address the problem, Fitzmorris would go to Human Resources. (S.S.M.F. ¶ 29; O.S.M.F. ¶ 29; A.S.M.F. ¶¶ 55-57.) Fitzmorris drafted an anonymous note about the situation to Pete McAllister, Mid-State's HR Manager, on or about March 28, 2009, and placed it under his door. (S.S.M.F. ¶ 30; O.S.M.F. ¶ 30.) The note, however, did not reference any sexual comments that were directed at McGahey; the letter simply informed McAllister that an employee in the Finishing Department had been intimidated and harassed. (S.S.M.F. ¶¶ 30-31; O.S.M.F. ¶ 30-31.)

On or about Monday, March 30, 2009, Fitzmorris approached McAllister, identified himself as the author of the note, and informed McAllister that the inappropriate conduct in the Finishing Department had been addressed. (S.S.M.F. ¶ 33; O.S.M.F. ¶ 33; A.S.M.F. ¶ 58.) Fitzmorris did not, however, reveal to McAllister the sexual nature of the comments directed to McGahey. (S.S.M.F. ¶ 34; O.S.M.F. ¶ 34.) On or around April 1, 2009, Fitzmorris spoke to Plaintiff again, and derided Plaintiff's handling of the situation because it served to exclude McGahey from the rest of the Finishing Department. (S.S.M.F. ¶¶ 35-36; O.S.M.F. ¶¶ 35-36; A.S.M.F. ¶ 59.) In response, Fitzmorris wrote McAllister a second note, stating McGahey was being mistreated, and that Plaintiff may have been involved in the mistreatment. (S.S.M.F. ¶ 37; O.S.M.F. ¶ 37.) This second note did not state that the comments were sexually explicit, and McAllister remained unaware of the comments' sexual nature. (S.S.M.F. ¶ 37; O.S.M.F. ¶ 37.)

4

On or about April 3, 2009, Fitzmorris told McAllister that all the issues raised in his April 1 letter had been addressed, and that McAllister could stop worrying about it. (S.S.M.F. ¶ 38; O.S.M.F. ¶ 38.) Later that same day, Jeff Farley, Mid-State's Manufacturing Manager, approached McAllister and asked if he was aware that McGahey was being called a "child molester" by his coworkers. (S.S.M.F. ¶ 39; O.S.M.F. ¶ 39.) Based on this discussion, McAllister began investigating the issues involving McGahey and whether Plaintiff had properly addressed them. (S.S.M.F. ¶ 40; O.S.M.F. ¶ 40.) The first step of this investigation included talking with Fitzmorris to learn more about the sexual explicitness of the comments. Fitzmorris told McAllister about the comments regarding McGahey performing sexual acts, the child molester comments, and the comments about McGahey's sexual orientation. (S.S.M.F. ¶¶ 41-42; O.S.M.F. ¶¶ 41-42.)

McAllister also spoke with McGahey who told McAllister about the comments, and that they were upsetting and hurtful; McGahey told McAllister that Plaintiff would sometimes laugh at the comments. (S.S.M.F. ¶ 43.) Plaintiff denies that he ever laughed at the comments, and stated that he never believed—until McGahey approached him on March 23, 2009—that McGahey found the comments to be upsetting or hurtful. (O.S.M.F. ¶ 43.) Mills joined McGahey and McAllister towards the end of their meeting, and told McAllister that Plaintiff had come to see him on March 30, 2009, but never mentioned anything about sexual comments. Mills also told McAllister that he had instructed Plaintiff to put a stop to the teasing. (S.S.M.F. ¶ 45; O.S.M.F. ¶ 45.)

Continuing through Monday, April 6, 2009, McAllister, in his capacity as Mid-State's HR Manager, conducted interviews of Russ Simpson, Drew Bridger, Bud Bolduc, and Alan

5

Mathieu, all of whom allegedly observed the teasing of McGahey.[6] (S.S.M.F. ¶¶ 46, 48-50; O.S.M.F. ¶¶ 46, 48-49; A.S.M.F. ¶¶ 64-65.) After concluding these interviews on April 6, McAllister met with Alan Dorval, Mid-State's President and CEO, and Kevin Nelson, Mid-State's Vice President of Operations, to discuss McAllister's findings. After considering the information, Dorval decided to terminate Plaintiff's employment.[7] (S.S.M.F. ¶ 51; O.S.M.F. ¶ 51; A.S.M.F. ¶ 73.)

Dorval provided, by way of apparent justification for Mid-State's termination decision, that Plaintiff was fired because he failed to address timely McGahey's mistreatment, because he allegedly participated in abusive an sexually inappropriate teasing of McGahey,[8] and because he had on this and a prior occasion used poor managerial judgment.[9] (S.S.M.F. ¶ 53; O.S.M.F. ¶ 53.)

## PROCEDURAL BACKGROUND

Plaintiff, a former employee of Mid-State Machine Products, initially maintained that he was fired because of his age, and filed suit under the Age Discrimination in Employment Act (ADEA) and the MWPA. After Plaintiff filed suit in Superior Court (Kennebec County), Defendants removed the case to the United States District Court for the District of Maine. On September 11, 2012, the District Court (Woodcock, C. J.) granted Defendants' motion for summary judgment as to the ADEA claim, and remanded the MWPA claim to state court. Defendants have moved for summary judgment on the MWPA claim.

---

[6] Plaintiff asserts, through record citation, that only Simpson and Bridger mentioned hearing teasing of a sexual nature. (A.S.M.F. ¶ 69.) However, Defendants correctly point out that the Plaintiff also acknowledged overhearing the sexually explicit comments. (R.S.M.F. ¶ 69.)

[7] Defendants terminated Plaintiff's employment on Monday morning, April 6, 2009. (A.S.M.F. ¶ 73.)

[8] Plaintiff denies that he condoned or participated in Lister and Mosher's mistreatment of McGahey. (O.S.M.F. ¶ 53.)

[9] Plaintiff, however, asserts that Defendants provided no specific reason or explanation for Plaintiff's termination, but Defendants claim that Plaintiff was aware that his discharge was because he failed to perform his duties as a supervisor. (A.S.M.F. ¶ 74; R.S.M.F. ¶ 74.)

6

## STANDARD OF REVIEW

Summary judgment is appropriate when the court's review of the parties' statements of material fact and cited record evidence indicates that there are no genuine issues of disputed material fact, and that the moving party is entitled to judgment as a matter of law. *See* M.R. Civ. P. 56(c); *see e.g., Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; *Darlings v. Ford Motor Co.*, 2003 ME 21, ¶ 14, 817 A.2d 877. A fact is material if it has the potential to impact the outcome of the case. *See Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778 (citation omitted). An issue of fact is genuine when "sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Id; see also MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040; *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169. An opposing party can survive a motion for summary judgment by producing evidence that, if produced at trial, would be enough to resist a motion for a judgment as a matter of law. *See Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 8, 694 A.2d 924; *Lincoln Rental Sys. v. Lincoln Sanitary Dist.*, 2006 WL 6334627 (Me. Super. Mar. 29, 2006).

On motion for summary judgment, the Court compares the parties' statements of material fact as well as the corresponding record references. *See Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 8, 742 A.2d 933; *Lincoln Rental Sys.*, 2006 WL 6334627. At the summary judgment stage, the Court considers the evidence in the light most favorable to the non-moving party. *See Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733, 738; *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63.

## DISCUSSION

I.     *The MWPA*

In relevant part, the MWPA provides:

No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:

**A.** The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States;

26 M.R.S.A. § 833(1)(A). The MWPA prohibits an employer from firing an employee for reporting "what the employee has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual." *Id.* at § 833(1)(B); *see also LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 19, 909 A.2d 629 ("prohibit[ing] an employer from taking adverse action against an employee who reports a suspected violation of a law or rule."). While the MWPA "does not itself provide a judicial remedy," the Maine Human Rights Act "provides a direct cause of action for employees alleging discrimination based on WPA-protected whistleblowing activity." *Fuhrmann v. Staples Office Superstore E., Inc.*, 2012 ME 135, ¶ 14, 58 A.3d 1083.

In order to establish a *prima facie* case, a plaintiff must show: "(1) that he was engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that a causal nexus exists between the activity and the adverse action." *LePage*, 2006 ME 130, ¶ 19, 909 A.2d 629; *see also DiCentes v. Michaud*, 1998 ME 227, ¶ 14, 719 A.2d 509 (highlighting the "causal link" requirement). Maine's courts apply a burden shifting analysis derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which provides:

8

once the plaintiff has shown a protected activity followed in close proximity by an adverse employment action, [this] gives rise to an inference that a causal connection is established; the employer, then, will be required to produce some probative evidence to demonstrate a nondiscriminatory reason for the adverse employment action.

*LePage*, 2006 ME 130, ¶ 19, 909 A.2d 629 (internal quotation marks omitted). Next, "[a]fter the defendant has articulated a nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the nondiscriminatory reason is pretextual or irrelevant and that the unlawful discrimination brought about the adverse employment action." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 15, 824 A.2d 48.

In the September 11, 2012 Order on Motion for Summary Judgment, the United States District Court (Woodcock, C.J.) identified several issues generated by Hall's MWPA state law claim. *See Hall v. Mid-State Mach. Prods. Co.*, 895 F. Supp. 2d 243, 277 (D. Me. 2012). In particular, the District Court explained that the relevant questions are: "whether Mr. Hall engaged in protected activity, whether his report of the sexual harassment of Mr. McGahey was in conformity with his job duties, whether he was complicit in the misconduct, and whether his complicity, if proven, bars his MWPA claim." *Id.* Plaintiff contends that his report of the allegations of sexual harassment constitutes protected activity, and that the MWPA protects Plaintiff regardless of his job responsibilities.

A. *Report of Conduct of Other Employee as Protected Activity*

Under the MWPA,

an employee has engaged in protected activity if she has report[ed] orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States.

*Bodman v. Maine, Dep't of Health and Human Servs.*, 720 F. Supp. 2d 115, 124-25 (D. Me. 2010) (*citing* 26 M.R.S.A. § 833(1)(A)) (internal quotation marks omitted). The District of

9

Maine has further defined protected activity as encompassing conduct wherein an employee, in good faith, makes a report that he or she had reasonable cause to believe that a condition or practice of the employer would put the health and safety of that employee or any other individual at risk. *See Gammon v. Crisis and Counseling Ctrs.*, 762 F. Supp. 2d 165, 182-83 (D. Me. 2011). The good faith analysis begins with an assessment "of whether the purported whistleblower made h[is] complaints for the purpose of exposing illegal or unsafe practices." *Id.* at 183. The Law Court has additionally held that "the protection afforded by the MWPA is 'unambiguously limit[ed] . . . to (1) employees (2) who report to an employer (3) about a violation (4) committed or practiced by *that employer.*'" *Bodman*, 720 F. Supp. 2d at 125 (*citing Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 8, 954 A.2d 1051) (emphasis in original).

A preliminary issue is thus whether Plaintiff's complaint about the conduct of other employees constitutes a protected activity. *Bodman* is instructive on this issue. The plaintiff in *Bodman* complained to her supervisor that a co-worker breached her expectation of confidentiality by forwarding to a man named Damon, her abusive ex-boyfriend, a private email she wrote asking that Damon be excluded from the company softball team. *See id.* at 125. As characterized by the court, Bodman claimed that the defendant-employer violated the MWPA "when, in response to her reports of unlawful conduct and harassment to her supervisors, it imposed more burdens on [her], including harsh treatment, unlawful discrimination[,] shame, additional harassment, exposure to further violent acts, and derogatory conditions." *Bodman*, 720 F. Supp. 2d at 124.

While the court initially observed that the conduct about which Bodman complained was typically not a basis for a claim under the MWPA because the plaintiff reported the harassment

10

of an individual who was not an employee, the court acknowledged two exceptions whereby the plaintiff potentially engaged in protected activity:

> (1) she complained to her "supervisor and other staff" when a co-worker forwarded to Damon her email requesting that Damon be excluded from participation on the agency softball team because of his harassment; and (2) she filed a Union grievance, the contents of which the [c]ourt assumes were related to both the softball incident and the harassment in her work environment, to which her employer did not respond.

*Id.* at 125. Ultimately, as pertains to her MWPA claim and the question of whether her conduct constituted protected activity, the court determined that the plaintiff "complained about conduct by another employee, which she considered to be a breach of confidentiality, to an individual who could address the violation; this satisfies the protected activity element of the MWPA prima facie case." *Id.* Under the analysis and reasoning of *Bodman*, the fact that Plaintiff's alleged protected activity was the report of the conduct of two employees, Lister and Mosher, would not, as Defendants contend, preclude Plaintiff's recovery.

B. *Whether Hall Was a Whistleblower and the "Manager Rule"*

Defendants argue that Plaintiff did not actually "blow the whistle" because he was McGahey's supervisor, learned about the "harassment" of McGahey in his capacity as a supervisor, and Plaintiff was responsible for terminating and reporting such behavior. In support of this argument, Defendants cite *Malone v. Lockheed Martin Corp.*, 2009 WL 2151706 (D.R.I. July 16, 2009). In *Malone*, the plaintiff (Malone) was a Field Engineering Manager who reported to his direct supervisor and superior about a complaint he received from a subordinate of alleged harassment. *See id.* at *3. The subordinate also reported that a co-worker had been accepting gifts of tools from a government employee. *See id.* Malone was initially unaware of this, but after the employer's HR manager conducted an investigation, the employer concluded that the acceptance of tools by members of Malone's team was improper. *See id.* Malone was

11

issued a disciplinary warning letter addressing "Negligent Supervisory Responsibilities," and was told that his "lack of effective and/or active management practices . . ." and "actions as a supervisor were unacceptable and negatively impacted the overall performance of [his] work group." *Id.* at 4 (internal quotation marks omitted). Malone filed a claim under the Rhode Island Whistleblowers' Protection Act ("RIWPA")[10] claiming that he had reported the tool and harassment incidents to his supervisor, but no action was taken. *See id.* at *5.

The RIWPA requires the plaintiff to prove by a preponderance of the evidence that:

(1) he reported, verbally or in writing to Lockheed Martin or to his supervisor a violation of a federal, state, or local law or regulation which Malone knew or reasonably believed had occurred or was about to occur; (2) he was discharged, threatened or otherwise discriminated against by Lockheed Martin; and (3) there was a causal connection between the report and the discharge, threat or discrimination.

*Id.* at *13. Applying this standard of review, the court in *Malone* ultimately held that "Malone's report to his supervisor is not the type of conduct the whistleblower statute seeks to protect." *Id.*

The concept of a "manager rule" has also been considered and applied in Maine. In *Capalbo v. Kris-Way Trust Leasing, Inc.*, 821 F. Supp. 2d 397, 419 (D. Me. 2011), after observing that it was aware of "no case considering whether the making of a required report constitutes a protected activity for purposes of the MWPA," the court wrote, "a protected activity 'is broadly defined as conduct by the plaintiff that is in opposition to an unlawful employment

---

[10] The Defendants state, and the Plaintiff does not contradict, that the RIWPA is similar to the MWPA, and provides:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, location, or privileges of employment . . . (4) because the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States, unless the employee knows or has reason to know that the report is false . . . .

R.I. GEN. LAWS § 28-50-3(4) (2002).

practice of the defendant.'" *Id.* (*citing Osher v. Univ. of Me. Sys.*, 703 F. Supp. 2d 51, 66 (D. Me. 2010)). In granting summary judgment, the court concluded, that "[n]o reasonable trier of fact could conclude that the reports described by Capalbo, which Kris-Way required of him, constituted conduct in opposition to an unlawful employment practice of Kris-Way." *Capalbo*, 821 F. Supp. 2d at 419.

Similarly, in *Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1352 (Fed. Cir. 2001), the court wrote that an employee who has, "as part of his normal duties, been assigned the task of investigating and reporting wrongdoing . . . and, in fact, reports that wrongdoing through normal channels[]" is not engaged in activity protected by the WPA. *Huffman*, 263 F.3d at 1352. The court further observed that "a disclosure cannot be protected by the WPA if an employee is merely performing his required duties." 263 F.3d at 1346.

In an attempt to distinguish his case, Plaintiff contends that the "manager rule" should not apply to him or other similarly situated managers whose primary responsibility is to manage a particular department – the Finishing Department in Plaintiff's case. That is, Plaintiff maintains that the rule should only apply to those who are primarily responsible for reporting misconduct such as the alleged harassment in this case. Because most managers or supervisors have multiple responsibilities, the distinction urged by Plaintiff would eviscerate the rule. Here, Plaintiff concedes that as a supervisor, he was required to promote a respectful workplace, to take action when misconduct, harassment, or other inappropriate conduct occurs in the workplace, and to report inappropriate workplace misconduct, including harassment and other threatening behavior to his supervisor and other company officials. (S.S.M.F. ¶¶ 8, 9; O.S.M.F. ¶¶ 8, 9). Plaintiff cannot recover under MWPA for making a report that was within his normal job duties.

13

## CONCLUSION

Based on the foregoing analysis, the Court concludes that there are no issues of material fact in dispute.[11] Accordingly, the Court grants Defendants' Motion for Summary Judgment, and enters judgment in favor of Defendants on Plaintiff's MWPA claim.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 9/4/13

_____
Justice, Maine Superior Court

---

[11] Because the Court has determined that Plaintiff's report to his supervisor is not a protected activity because the report was within Plaintiff's normal job duties, the Court does not address Defendants' remaining arguments in support of their request for summary judgment.

LINWOOD HALL  - PLAINTIFF
3635 MIDDLE ROAD
SIDNEY ME 04330
Attorney for: LINWOOD HALL
PHILIP P MANCINI  - RETAINED
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND ME 04101


Attorney for: LINWOOD HALL
ALEXANDER WILSON SAKSEN  - REMOVAL
BENDETT & MCHUGH
30 DANFORTH ST SUITE 104
PORTLAND ME 04103


Attorney for: LINWOOD HALL
ANDREW PAUL PIERCE  - RETAINED
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND ME 04101


vs
MID STATE MACHINE PRODUCTS - DEFENDANT
83 VENTI DRIVE
WINSLOW ME 04901
Attorney for: MID STATE MACHINE PRODUCTS
RICHARD MOON  - RETAINED
VERRILL DANA LLP
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586


Attorney for: MID STATE MACHINE PRODUCTS
TAWNY LYNN ALVAREZ  - RETAINED
VERRILL DANA LLP
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586


PRESISION PARTNERS HOLDING COMPANY - DEFENDANT
300 OAKTON STREET
SKOKIE IL 60076
Attorney for: PRESISION PARTNERS HOLDING COMPANY
RICHARD MOON  - RETAINED
VERRILL DANA LLP
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2011-00068


DOCKET RECORD

Attorney for: PRESISION PARTNERS HOLDING COMPANY
TAWNY LYNN ALVAREZ  - RETAINED
VERRILL DANA LLP
ONE PORTLAND SQUARE
PO BOX 586
PORTLAND ME 04112-0586


Filing Document: COMPLAINT                    Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 03/28/2011

## Docket Events:

03/28/2011 FILING DOCUMENT - COMPLAINT FILED ON 03/28/2011

03/28/2011 Party(s):  LINWOOD HALL
        ATTORNEY - RETAINED ENTERED ON 03/28/2011
        Plaintiff's Attorney: ALEXANDER WILSON SAKSEN

04/07/2011 Party(s):  MID STATE MACHINE PRODUCTS
        SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 03/29/2011
        ORIGINAL SUMMONS WITH RETURN SERVICE MADE UPON ROBERT DAVEAU ON BEHALF OF MID-STATE
        MACHINE PRODUCTS

04/26/2011 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
        SUPPLEMENTAL FILING - NOTICE OF REMOVAL FILED ON 04/25/2011
        Defendant's Attorney: RICHARD MOON

04/26/2011 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
        FINDING - REMOVAL TO FEDERAL COURT ENTERED ON 04/25/2011
        Defendant's Attorney: RICHARD MOON

09/26/2012 NOTE - OTHER CASE NOTE ENTERED ON 09/12/2012
        US DISTRICT COURT GRANTED DEFTS' MOTION FOR SJ AND REMANDED THE CASE TO THE KENNEBC COUNTY
        SUPERIOR COURT.
                                FEDERAL DOCKET SHEET AND ORDER IN FILE.
                        FEDERAL FILING DOCUMENTS IN VAULT.

10/10/2012 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 06/01/2013

        ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 10/10/2012
        NANCY  MILLS , JUSTICE

10/10/2012 ORDER - SCHEDULING ORDER ENTERED ON 10/10/2012
        NANCY  MILLS , JUSTICE
        ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
        PARTIES/COUNSEL

10/10/2012 Party(s):  MID STATE MACHINE PRODUCTS
        ATTORNEY - RETAINED ENTERED ON 10/10/2012
        Defendant's Attorney: RICHARD MOON

10/10/2012 Party(s):  PRESISION PARTNERS HOLDING COMPANY
        ATTORNEY - RETAINED ENTERED ON 10/10/2012
        Defendant's Attorney: RICHARD MOON

12/20/2012 ADR - NOTICE OF ADR PROCESS/NEUTRAL FILED ON 12/20/2012
         MEDIATION WAS HELD ON 12/14/12 BEFORE J. PIERSON AND WAS NOT RESOLVED.

02/05/2013 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 02/05/2013
         JOHN  NIVISON , JUSTICE

02/05/2013 Party(s):  LINWOOD HALL
         ATTORNEY - RETAINED ENTERED ON 12/20/2012
         Plaintiff's Attorney: PHILIP P MANCINI

02/06/2013 Party(s):  MID STATE MACHINE PRODUCTS
         MOTION - MOTION SUMMARY JUDGMENT FILED ON 02/04/2013
         Defendant's Attorney: RICHARD MOON
         WITH MEMORANDUM OF LAW, STATEMENT OF MATERIAL FACTS WITH ATTACHED EXHIBITS

02/12/2013 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
         LETTER - FROM PARTY FILED ON 02/11/2013
         Defendant's Attorney: RICHARD MOON
         DOCUMENT SENT TO OPPOSING COUNSEL

02/22/2013 Party(s):  LINWOOD HALL
         OTHER FILING - OPPOSING MEMORANDUM FILED ON 02/22/2013
         Plaintiff's Attorney:  PHILIP P MANCINI
         TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, STATEMENT OF MATERIAL FACTS, AFFIDAVIT OF
         PETER MCALLISTER, AFFIDAVIT OF RANDALL MCGAHEY

02/22/2013 OTHER FILING - TRANSCRIPT FILED ON 02/22/2013
         DEPOSITION OF LINWOOD HALL, MID-STATE MACHINE PRODUCTS, EVANS J. LISTER, PETER MCALLISTER
         WITH ATTACHED EXHIBITS

03/04/2013 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
         MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 03/04/2013
         Defendant's Attorney: RICHARD MOON
         TO REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT WITH PROPOSED ORDER

03/07/2013 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
         MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 03/07/2013
         JOHN  NIVISON , JUSTICE
         IT IS HEREBY ORDERED THAT THE DEADLINE FOR DEFENDANTS TO FILE THEIR REPLY MEMORANDUM TO
         PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OPPOSING STATEMENT OF MATERIAL
         FACTS AND ADDITIONAL FACTS IS EXTENDED TO MARCH 14,2013
                                  COPIES TO ATTYS. OF RECORD.

03/20/2013 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
         OTHER FILING - REPLY MEMORANDUM FILED ON 03/14/2013
         Defendant's Attorney: RICHARD MOON
         DEFTS' REPLY TO PLTF'S OPPOSITION TO MOTION FOR SJ.  DEFTS' RESPONSE TO PLTF'S ADDITIONAL
         FACTS

03/28/2013 Party(s):  LINWOOD HALL
         ATTORNEY - REMOVAL ORDERED ON 03/28/2013
         Plaintiff's Attorney: ALEXANDER WILSON SAKSEN

03/28/2013 Party(s): LINWOOD HALL
ATTORNEY - RETAINED ENTERED ON 03/28/2013
Plaintiff's Attorney: ANDREW PAUL PIERCE

05/07/2013 Party(s): LINWOOD HALL
JURY FILING - DEMAND FOR JURY TRIAL FILED ON 05/07/2013
Plaintiff's Attorney: PHILIP P MANCINI

05/07/2013 HEARING - MOTION SUMMARY JUDGMENT SCHEDULED FOR 06/10/2013 at 08:30 a.m. in Room No. 1
JOHN NIVISON , JUSTICE

05/07/2013 HEARING - MOTION SUMMARY JUDGMENT NOTICE SENT ON 05/07/2013

05/22/2013 HEARING - MOTION SUMMARY JUDGMENT NOT HELD ON 05/15/2013
TO BE RESCHEDULED

06/04/2013 HEARING -'MOTION SUMMARY JUDGMENT SCHEDULED FOR 06/20/2013 at 09:00 a.m. in Room No. 1
JOHN NIVISON , JUSTICE

06/04/2013 HEARING - MOTION SUMMARY JUDGMENT NOTICE SENT ON 06/04/2013

06/25/2013 Party(s): LINWOOD HALL
OTHER FILING - WITNESS & EXHIBIT LIST FILED ON 06/25/2013
Plaintiff's Attorney: PHILIP P MANCINI

06/25/2013 OTHER FILING - STATEMENT OF TIME FOR TRIAL FILED ON 06/25/2013

07/02/2013 Party(s): MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
OTHER FILING - ENTRY OF APPEARANCE FILED ON 06/27/2013
Defendant's Attorney: TAWNY LYNN ALVAREZ

07/02/2013 Party(s): MID STATE MACHINE PRODUCTS
ATTORNEY - RETAINED ENTERED ON 06/27/2013
Defendant's Attorney: TAWNY LYNN ALVAREZ

07/02/2013 Party(s): PRESISION PARTNERS HOLDING COMPANY
ATTORNEY - RETAINED ENTERED ON 06/27/2013
Defendant's Attorney: TAWNY LYNN ALVAREZ

07/02/2013 HEARING - MOTION SUMMARY JUDGMENT HELD ON 06/20/2013
JOHN NIVISON , JUSTICE
Defendant's Attorney: RICHARD MOON
Plaintiff's Attorney: PHILIP P MANCINI
TAPE 1696, INDEX 1696-2761                                        UNDER
ADVISEMENT

07/02/2013 Party(s): MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
MOTION - MOTION ALTER/AMEND ORDER/JUDG FILED ON 06/27/2013
Defendant's Attorney: TAWNY LYNN ALVAREZ
CONSENT MOTION TO AMEND SCHEDULING ORDER NUNC PRO TUNC

07/17/2013 Party(s): MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY

MOTION - MOTION ALTER/AMEND ORDER/JUDG GRANTED ON 07/16/2013
JOHN  NIVISON , JUSTICE
COPIES TO PARTIES/COUNSEL                                              WITNESS AND
EXHIBIT LISTS AND ESTIMATED TIME FOR TRIAL DUE 14 DAYS AFTER COURT RULES ON PENDING MOTION
SJ.

07/25/2013 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
           MOTION - MOTION TO CONTINUE FILED ON 07/25/2013
           Defendant's Attorney: RICHARD MOON
           CONSENTED TO MOTION TO CONTINUE TRIAL AND TRIAL MANAGEMENT CONFERENCE

08/02/2013 TRIAL - TRAILING LIST SCHEDULED FOR 07/22/2013
           9/3 TO 10/4

08/02/2013 HEARING - TRIAL MANAGEMENT CONFERENCE SCHEDULED FOR 09/04/2013 at 08:45 a.m.  in Room No.  1
           JOHN  NIVISON , JUSTICE
           NOTICE TO PARTIES/COUNSEL

08/07/2013 TRIAL - TRAILING LIST NOT HELD ON 08/07/2013

08/07/2013 TRIAL - TRAILING LIST CONTINUED ON 08/07/2013

08/07/2013 HEARING - TRIAL MANAGEMENT CONFERENCE NOT HELD ON 08/07/2013

08/07/2013 HEARING - TRIAL MANAGEMENT CONFERENCE CONTINUED ON 08/07/2013

08/07/2013 Party(s):  MID STATE MACHINE PRODUCTS,PRESISION PARTNERS HOLDING COMPANY
           MOTION - MOTION TO CONTINUE GRANTED ON 08/07/2013
           JOHN  NIVISON , JUSTICE
           COPIES TO PARTIES/COUNSEL                                    CONTINUED TO
           NEXT TRIAL DATE

09/06/2013 Party(s):  MID STATE MACHINE PRODUCTS
           MOTION - MOTION SUMMARY JUDGMENT GRANTED ON 09/04/2013
           JOHN  NIVISON , JUSTICE
           COPIES TO PARTIES/COUNSEL

09/06/2013 FINDING - JUDGMENT DETERMINATION ENTERED ON 09/04/2013
           JOHN  NIVISON , JUSTICE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL                                              COPIES TO REPOSITORIES

           ORDER - SUMMARY JUDGMENT ENTERED ON 09/04/2013
           JOHN  NIVISON , JUSTICE
           ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
           PARTIES/COUNSEL                                              COPIES TO REPOSITORIES
           Judgment entered for MID STATE MACHINE PRODUCTS, PRESISION PARTNERS HOLDING COMPANY and against
           LINWOOD HALL.

09/06/2013 FINDING - FINAL JUDGMENT CASE CLOSED ON 09/06/2013

A TRUE COPY
ATTEST: _____
                    Clerk