2003 ME 61

Cathy DOYLE

v.

**DEPARTMENT OF HUMAN
SERVICES**

.

Supreme Judicial Court of Maine.

Argued: Dec. 11, 2002.
Decided: April 28, 2003.

Tracie L. Adamson, (orally), Sumner H. Lipman, Lipman, Katz & McKee, P.A., Augusta, for plaintiff.

G. Steven Rowe, Attorney General, Susan P. Herman, Asst. Attorney General (orally), Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Cathy Doyle appeals from the grant of a summary judgment entered in the Superior Court (Kennebec County, *Marden, J.*) in favor of the Department of Human Services (DHS). Doyle contends that the court erred when it concluded that Doyle failed to establish her claims for discrimination, retaliation, and a hostile work environment under the Maine Human Rights Act (MHRA), 5 M.R.S.A. §§ 4551–4634 (2002). We find no error and affirm the judgment.

## I. CASE HISTORY

[¶ 2] The following undisputed, properly supported and cited material and background facts are stated in the light most favorable to Doyle.

[¶ 3] In 1995, Doyle had her large intestine and rectum permanently removed, and an internal reservoir for waste (a J-pouch) was constructed out of her small intestine. Because of her condition, she typically needs to use the bathroom ten to

twenty-five times per day plus an additional one-hour session before work and immediately after work each day. In addition, she experiences daily pain; develops infections with complications every couple of months; and needs to be hospitalized for immobilizing pain, uncontrollable vomiting, and dehydration several times a year. Doyle is able to walk, sit, stand, think, and concentrate. She feels she needs the following accommodations to perform clerical work: an altered work schedule, permission to go to the restroom whenever necessary, permission to freely pace instead of sitting whenever she becomes uncomfortable, and permission to leave work for her numerous medical treatments.

[¶ 4] Doyle has worked on and off for the State of Maine since 1977. In November 1998, Doyle was promoted from Clerk Typist II to Clerk Typist III in the Bureau of Medical Services Inquiry Unit of DHS. A Clerk Typist III is responsible for answering a high volume of calls using a telephone-answering headset and for researching inquiries by computer on the status of Medicaid claims. After Beth Ketch, the supervisor of the inquiry unit, approved Doyle's request to work an altered work schedule from 7:30 a.m. to 4:00 p.m., Doyle began her new job in a probationary status.

[¶ 5] On December 7, India Kiesow succeeded Ketch as Doyle's supervisor. Between mid-December 1998 and early January 1999, Kiesow noted the following deficiencies in Doyle's work performance: failure to follow guidelines by improperly using the unavailable mode of the an-

swering machine and personally speaking to a provider relations specialist regarding an inquiry; exhibiting a poor attitude during a training session; exhibiting a hostile attitude toward Kiesow and rolling her eyes in response to Kiesow's questions; giving out incorrect information to a provider using information from a Rolodex that she had been instructed not to use; providing information contained in internal-use-only staff notes regarding a dental provider to a Medicaid recipient seeking a referral; making personal calls when she was not on break or lunch and when there was a backlog of incoming calls; and asking the training coordinator of the Inquiry Unit to respond to a phone inquiry after having been told to not refer any calls to that individual.

[¶ 6] On December 23, Doyle met with Ketch and Kiesow to discuss a request that Doyle had submitted to the human resources office seeking, as a work accommodation, permission to regularly get up from her desk and move around. When Doyle stated that she needed to use the restroom whenever she wanted, Kiesow told Doyle that she should go to the restroom when needed because Kiesow did not want to "clean it up." On January 11, 1999, Kiesow, Ketch, and the Assistant Director for the Bureau of Medical Services met with Doyle and informed her of the termination of her probationary period and reassignment to her prior position.

[¶ 7] On November 13, 2000, Doyle filed a complaint[1] pursuant to the Maine Human Rights Act and the American with Disabilities Act (ADA)[2] alleging, among

1. Doyle had previously filed a disability discrimination charge with the Maine Human Rights Commission in April 1999. Both parties provided written information; a fact-finding conference was held; an Investigator's Report was issued; and Doyle made a settlement demand upon DHS's counsel. No information was provided by the parties as to the outcome of this claim.

2. 42 U.S.C. §§ 12101–12213 (2000). This part of the claim was dropped at the hearing after Doyle acknowledged that she was no longer pursuing a claim under the ADA because of recent changes in the law.

other matters, that DHS discriminated against her with respect to hostile and unreasonable conditions of employment and then by terminating her probationary period, and that DHS retaliated by subjecting Doyle to a hostile environment and demoting her after she complained about the lack of reasonable accommodations. DHS filed a motion for summary judgment pursuant to M.R. Civ. P. 56. After a hearing, the Superior Court granted DHS's motion for a summary judgment in a detailed and comprehensive opinion. The court's decision noted numerous instances in which Doyle's opposing statement of material facts failed to effectively controvert the facts set forth in DHS's statement of material facts. Doyle filed this appeal.

## II. DISCUSSION

### A. Standard of Review

[¶ 8] We review a summary judgment de novo, "viewing the evidence in the light most favorable to the party against whom judgment has been granted to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact," *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380 (internal citation omitted), and whether "the moving party is entitled to judgment as a matter of law." *Stanton v. Univ. of Me. Sys.*, 2001 ME 96, ¶ 6, 773 A.2d 1045, 1048.

[¶ 9] To survive a defendant's motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action. *MC Assocs. v. Town of Cape Elizabeth*, 2001 ME 89, ¶ 7, 773 A.2d 439, 442, *cert. denied*, 534 U.S. 1081, 122 S.Ct. 813, 151 L.Ed.2d 697 (2002). If the plaintiff presents insufficient evidence on an essential element in her cause of action, such that "the defendant would ... be entitled to judgment as a matter of law on that state of the evidence at a trial, the defendant is entitled to a summary judgment." *Johnson v. Carleton*, 2001 ME 12, ¶ 11, 765 A.2d 571, 575.

### B. Doyle's Opposing Statement of Material Facts

[¶ 10] Doyle challenges the Superior Court's determination that she failed to properly dispute numerous facts set forth in DHS's statement of material facts. Contrary to her contention, however, Doyle did fail to comply with the requirements of Rule 56(h)(2) in several important respects. First, and most crucial, Doyle did not properly support many of her denials and qualifications with record citations relevant to the proposition for which they were cited.[3] A party's statement of material facts opposing the other party's statement "must explicitly admit, deny, or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77,

---

3. For example, in the tenth paragraph of Doyle's opposing statement of material facts, Doyle denies that Kiesow observed her use the unavailable mode on her telephone for approximately four minutes on December 15 in violation of Kiesow's guidelines and cites to page 19, lines 19–25; page 10, lines 1–13; and page 45, lines 17–25 of Doyle's deposition; and Exhibit 3. However, the page 19 citation refers to Doyle's explanation of how to work the unavailable mode; the page 10 citation refers to Doyle's accommodation and Doyle's previous supervisors; the page 45 citation refers to Doyle's description of keeping a record of logging on and off; and Exhibit 3 is twelve pages of Doyle's informal notes from December 16, 1998 until January 11, 1999. Consequently, none of these record citations provide proper support for Doyle's denial of using the unavailable mode for approximately four minutes on December 15 contrary to Kiesow's explicit instructions.

¶ 6 n. 5, 770 A.2d 653, 655; M.R. Civ. P. 56(h)(2). Because Doyle failed to properly controvert many of the facts set forth by DHS, we treat those facts as admitted. M.R. Civ. P. 56(h)(4).

[¶ 11] Second, in her statement of disputed material facts, Doyle improperly commingled additional facts in paragraphs that should have been limited to controverting DHS's asserted facts, and failed to include her additional facts in a separate section with numbered paragraphs supported by record citations.[4] A nonmoving party may choose to include in her opposing statement of material facts a separate section of additional facts; these facts are to be organized in separate numbered paragraphs and supported by record citations. M.R. Civ. P. 56(h)(2). In response, the moving party can prepare a reply statement of material facts in which the moving party admits, denies, or qualifies the additional facts, providing record citation support for each denial or qualification. M.R. Civ. P. 56(h)(3). A court need not consider additional facts when, as here, they are improperly commingled in the nonmoving party's paragraphs responding to the moving party's material facts, *see Burbank v. Davis*, 227 F.Supp.2d 176, 179 (D.Me.2002), and are not set forth in a separate section of additional facts organized in separate numbered paragraphs added pursuant to Rule 56(h)(2).

[¶ 12] Third, Doyle relied upon citations to affidavits containing inadmissible hearsay and statements for which the affiants had no personal knowledge.[5] Each party's statement of material facts must contain specific record references which "refer to evidence of a quality that could be admissible at trial." *Levine*, 2001 ME 77, ¶ 6, 770 A.2d at 656.

[¶ 13] Because Doyle failed to follow the protocol set forth in Rule 56, many of DHS's material facts are not controverted and thus are properly deemed admitted. In addition, because Doyle failed to include a separate section of additional facts, the trial court, and now we, need not consider the additional facts that were interwoven in Doyle's response to DHS's statement of material facts. The Superior Court did not err in its application of the requirements of Rule 56.

## C. Discrimination Claim

[¶ 14] The MHRA renders it unlawful for an employer to discriminate against a qualified individual on the basis of a physical or mental disability. 5 M.R.S.A. § 4572 (2002). When a plaintiff lacks direct evidence that an employer's

---

4. For example, in the second paragraph of her statement of disputed material facts, Doyle admits the first two sentences of DHS's second paragraph, which state that Elaine Gagnon interviewed Doyle and Doyle requested a schedule accommodation. Doyle then disputes DHS's third sentence, "Ms. Ketch approved the Plaintiff's request." But instead of denying or qualifying the substance of the third sentence, Doyle adds information about Ketch initially declining to hire Doyle, Doyle's "very high recommendations," Doyle's "strong work history and a strong interview," and Doyle's request at the interview to be assigned to the rear-most workstation. Because this information does not speak to whether Ketch eventually approved Doyle's request, the information is extraneous and nonresponsive. Furthermore, this extra information is not set forth in a separate section of additional facts as required by M.R. Civ. P. 56(h)(2).

5. For example, the second sentence of the fifth paragraph of the affidavit of Elizabeth Welton, a provider relations specialist, states without foundation, "I believe the human resources department was aware or should have been aware of Doyle's health condition." It also contains several assertions based upon information Welton obtained from conversations with Doyle.

actions were motivated by discriminatory animus and relies instead on circumstantial evidence of discrimination, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies.[6] *Me. Human Rights Comm'n v. City of Auburn*, 408 A.2d 1253, 1261–62 (Me.1979). To establish a prima facie case of disability discrimination pursuant to the MHRA,[7] the plaintiff has the burden of establishing the following: first, she suffers from a disability; second, she is otherwise qualified, with or without reasonable accommodations, and is able to perform the essential functions of the job; and third, she was adversely treated by the employer based in whole or in part on her disability. *See Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 20 (1st Cir.2002); *Soto–Ocasio v. Fed. Express Corp.*, 150 F.3d 14, 18 (1st Cir.1998); *Lyons v. La. Pac. Corp.*, 217 F.Supp.2d 171, 176–77 (D.Me.2002).

[¶ 15] Once the plaintiff has established a presumption of discrimination, the burden of production, but not of persuasion, "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Gillen*, 283 F.3d at 30. After the defendant has articulated a nondiscriminatory reason, the burden shifts back to the plaintiff to demonstrate that the nondiscriminatory reason is pretextual or irrelevant and that the unlawful discrimination brought about the adverse employment action. *Id.* " 'The plaintiff at all times retains the ultimate burden of persuasion on the question whether unlawful discrimination has occurred.' " *Me. Human Rights Comm'n v. Dep't of Corr.*, 474 A.2d 860, 867 (Me.1984) (quoting *City of Auburn*, 408 A.2d at 1262); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[¶ 16] In granting a summary judgment to DHS, the Superior Court concluded that even if it assumed that Doyle had established a prima facie case of discrimination under the *McDonnell Douglas* framework, DHS successfully met its burden of articulating a legitimate, nondiscriminatory reason for the termination. Viewing the evidence properly supported in accordance with Rule 56 in the light most favorable to Doyle, we agree with this conclusion.[8] DHS articulated that it demoted Doyle because of several deficiencies including: using the unavailable mode on her telephone and leaving her workstation to speak to a specialist contrary to guidelines;[9] exhibiting a poor attitude during a training session;[10] providing in-

---

6. If, however, there are explicit statements by an employer that unambiguously demonstrate the employer's unlawful discrimination, then the "mixed-motive analysis" instead of the burden-shifting framework would apply. *Patten v. Wal–Mart Stores E., Inc.*, 300 F.3d 21, 25 (1st Cir.2002).

7. "[B]ecause the MHRA generally tracks federal anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA." *Winston v. Me. Technical Coll. Sys.*, 631 A.2d 70, 74–75 (Me.1993).

8. Because we conclude that DHS articulated a legitimate, nondiscriminatory reason for the termination of Doyle's probation, and Doyle failed to establish that the reason was pretextual or irrelevant, we do not address Doyle's additional argument that the Superior Court erred when it separately concluded that she failed to present a prima facie case of discrimination.

9. Doyle denies this allegation, but her record citations do not support her denial.

10. Doyle denies this allegation, citing to the affidavit of Elaine Gagnon and the deposition of Beth Ketch. Because neither Gagnon nor Ketch attended the training session, they did not have personal knowledge of Doyle's behavior during the training session.

ternal-use-only staff notes to a caller;[11] and referring a phone call to an individual contrary to instructions.[12]

[¶ 17] Because the foregoing reasons constitute a legitimate, nondiscriminatory basis to terminate Doyle's probationary period, the burden shifts back to Doyle to demonstrate pretext or irrelevance and that the unlawful discrimination brought about the adverse employment action. Doyle asserts that she met this burden by disputing the reasons given by DHS for the termination of her probation; by establishing that Kiesow was persistently hostile toward her; and by establishing that none of her coworkers were subject to disciplinary action for committing acts similar to those cited by DHS as the basis for its decision. As previously discussed, however, Doyle failed to effectively dispute the reasons asserted by DHS for the termination of her probation. In addition, she failed to set forth facts in a manner consistent with the protocol required by M.R. Civ. P. 56(h)(2) that support her claim that Kiesow was persistently hostile towards her and that she was disciplined for the same acts for which other employees were not disciplined.[13]

[¶ 18] Because DHS articulated legitimate nondiscriminatory reasons for the termination of Doyle's probationary period, and Doyle failed to establish that the reasons given for the termination of her probationary period were pretextual or irrelevant, Doyle failed to raise a genuine issue of material fact as to whether she was discriminated against by DHS.

## D. Retaliation Claim

[¶ 19] Doyle also contends that after she requested an accommodation, DHS retaliated by subjecting her to a hostile work environment and then terminating her probationary period. DHS responds that Doyle's retaliation claim fails because there is no evidence of a causal connection between Doyle's request for an accommodation and either her demotion or a hostile work environment.

[¶ 20] Retaliation is prohibited under the MHRA whenever an "individual has opposed any act or practice that is unlawful under [the MHRA] or because that individual made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under [the MHRA]." 5 M.R.S.A. § 4633(1) (2002). To establish a prima facie claim of

11. Doyle denies this allegation, citing to her affidavit. In the cited portion of her affidavit, she does not deny that she gave the staff notes to a caller.

12. Doyle denies this allegation, citing to her affidavit. In her affidavit, she explains why she referred the call but does not deny that she referred the call.

13. With respect to Doyle's claim that she was treated differently than similarly situated employees, the two affidavits she cites in support of this contention fail to demonstrate the existence of disputed material facts on the issue of pretext or relevance. The affidavit of Elizabeth Welton states that Doyle was the only member of the inquiry unit who was "formally reprimanded and demoted" for talking to a provider relations specialist and giving out incorrect information. However, Welton's affidavit fails to establish how she would have personal knowledge of disciplinary actions taken against other employees in the inquiry unit. Pursuant to 5 M.R.S.A. § 7070 (2002), personnel records, including, for example, other employees' performance evaluations, are confidential, and the affidavit fails to address whether or how Welton would have access to such confidential information. Moreover, the affidavit fails to identify whether any other inquiry unit employee was on probation, and thus similarly situated to Doyle. Doyle also asserts that Elaine "Gagnon did not witness Kiesow reprimand others," citing to the seventh and eighth paragraphs of Gagnon's affidavit. These paragraphs, however, are silent on this issue.

retaliation, the employee must show that she engaged in statutorily protected activity; her employer made an employment decision that adversely affected her; and that "there was a causal link between the protected activity and the adverse employment action." *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154 (Me.1991). If the adverse employment action happens in "close proximity" to the protected conduct, the burden shifts to the employer "to produce some probative evidence to demonstrate a nondiscriminatory reason for the adverse employment action." *DiCentes v. Michaud,* 1998 ME 227, ¶¶ 14–16, 719 A.2d 509, 514–15. "Once that evidence has been offered, the burden remains with the employee to persuade the factfinder that there was, in fact, a causal connection between the protected activity and the adverse employment action." *Id.*

▆▆▆▆ [¶ 21] The undisputed facts establish that shortly before December 23, 1998, Doyle talked with an official in the human resources office and requested, as a reasonable work accommodation, permission to get up from her workstation and move around. Viewing the evidence properly supported in accordance with Rule 56 in the light most favorable to Doyle, her request for a work accommodation was a protected act under the MHRA because DHS had not previously made "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee." 5 M.R.S.A. § 4553(2)(E) (2002). Thus, a genuine dispute of material facts exists with respect to this element of her claim. Furthermore, it is undisputed that Doyle suffered an adverse employment action in close proximity to her request because her Clerk Typist III probationary period was terminated less than three weeks later on January 11.

[¶ 22] However, the third element of Doyle's retaliation claim, causation, fails for the same reasons discussed in connection with her discrimination claim. Because DHS was able to articulate several nondiscriminatory reasons for the termination of Doyle's probationary period, she failed to establish that her request for an accommodation brought about her termination. Thus, the Superior Court did not err in entering a summary judgment for DHS on Doyle's retaliation claim.

E.   Hostile Environment Claim

▆▆▆▆ [¶ 23] Doyle contends that the court improperly determined that her claim of being subjected to a hostile environment by DHS was not supported by competent evidence in the record. Hostile environment claims involve repeated or intense harassment sufficiently severe or pervasive to create an abusive working environment. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115–16, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Id.* at 116, 122 S.Ct. 2061 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). While harassment may be actionable even if it only occurred one time, the inappropriate conduct must be severe enough to cause the workplace to become hostile or abusive. *Nadeau v. Rainbow Rugs, Inc.,* 675 A.2d 973, 976 (Me.1996) (involving a hostile work environment claim based upon one incident of sexual harassment brought pursuant to MHRA).

[¶ 24] Viewing the evidence properly presented in accordance with Rule 56 in the light most favorable to Doyle, the primary evidence for an actionable hostile work environment claim is Kiesow's comment that Doyle should go to the restroom because Kiesow did not want to "clean it up." According to Doyle, this comment was offensive and caused her anguish. Kiesow explained that her husband had a similar condition, she intended to deliver the comment in a light manner, and she apologized to Doyle after she realized that it was not perceived that way.[14]

[¶ 25] Without any consideration of Kiesow's explanation of her statement to Doyle, Kiesow's comment may have been offensive and in poor taste, but it is not conduct sufficiently severe or pervasive to constitute a hostile work environment. Accordingly, Doyle failed to establish a prima facie case of a hostile work environment.

The entry is:

Judgment affirmed.

14. We do not reach DHS's argument that the MHRA does not recognize a claim for a hostile work environment because, assuming that such a claim is cognizable, the undisputed facts do not demonstrate a hostile incident or incidents of sufficient severity or pervasiveness to constitute a hostile work environment.