STATE OF MAINE                                SUPERIOR COURT

Cumberland, ss.                                CIVIL ACTION


MICHELLE YOUNG

        Plaintiff

    v.                                         Docket No.: CUMSC-16-164

STATE OF MAINE,                    STATE OF MAINE
DEPARTMENT OF AGRICULTURE,         Cumberland, ss, Clerk's Office
CONSERVATION & FORESTRY,
BUREAU OF PUBLIC LANDS             JUN 05 2017
                                   10:07PM
        Defendant                  RECEIVED

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant State of Maine has filed a Motion For Summary Judgment on plaintiff

Michelle Young's Complaint for retaliation in violation of the Maine Whistleblower Protection

Act ("MWPA") (Count I); creation of a hostile work environment (Count II); and retaliation

under the Maine Human Rights Act ("MHRA") (Count III). Plaintiff opposes defendant's

Motion For Summary Judgment as to Counts I and III, but does not oppose the Motion as to

Count II.

Oral argument was held on June 1, 2017. Based on the parties' arguments, the summary

judgment record, and the reasons discussed below, the court grants defendant's Motion for

Summary Judgment as to Count II of plaintiff's complaint, and denies defendant's Motion for

Summary Judgment as to Counts I and III.

*I. Factual Background*

Plaintiff was employed on a seasonal basis as a park ranger at Mt. Blue State Park every

summer from 2007 through 2014, usually from late May to late August.  In the summer of

2014, a new customer representative assistant was hired to work at Mt. Blue State Park.  Prior

to August 7, 2014, this new employee engaged in conduct toward plaintiff that she found strange, but not threatening. (Def.'s Supp'g S.M.F. ¶ 37.) On August 7, 2014, however, the new employee offered plaintiff some almonds and made a sexual comment. (*Id.* ¶ 43.) Following this incident, plaintiff reported some of the employee's conduct, including the sexual comment of that day and a previous incident where the employee put his arms around plaintiff's neck, to her supervisor, Bruce Farnham, the park manager. (*Id.* ¶ 64.)

After receiving the plaintiff's complaint, Farnham contacted his supervisor and human resources personnel who promptly investigated plaintiff's allegations. (*Id.* ¶¶ 81-82, 91-93.) In Farnham's email reporting the incident, he stated that Jason Cuthbertson, the head ranger at the Park, made a comment to Farnham "that he could see a sexual harassment situation developing and that [plaintiff] made some questionable comments to [the new employee] as well." (Ex. 1 to Farnham Dep.) Farnham writes that he was not aware of the specific comments, but that plaintiff informed him Cuthbertson was present on the occasion when the new employee grabbed plaintiff's neck. (*Id.*)

Following the investigation, the Department of Agriculture, Conservation and Forestry ("Department") issued a written reprimand to the employee plaintiff had complained about. (Def.'s Supp'g S.M.F. ¶ 97.) Immediately after the written reprimand, Daryl Touchette, a Human Resources Manager for the State's Natural Resource Service Center conducted a one-on-one training session with the employee about the State's workplace harassment policy. (*Id.* ¶ 104.)

Plaintiff testified that after she reported the claim, Farnham's tone towards her changed and Farnham would avoid her. (Young Dep. 168.) She opined that Farnham likely avoided her because he was uncomfortable about what happened and that it was an uncomfortable situation. (*Id.*) She testified that Farnham stopped his periodic practice of coming by to where she was

2

working for informal conversation. (*Id.* at 168-169.) Plaintiff further testified that when she told Farnham she was going to take vacation time after her complaint, he seemed relieved. (*Id.* at 174.) Plaintiff speculates that Farnham was relieved because he wouldn't have to deal with plaintiff's situation while she was on vacation. (*Id.*)

On August 19, 2014, Farnham wrote plaintiff's seasonal performance evaluation in which he assessed her performance as satisfactory and meeting expectations, and recommended her to receive a merit increase. (Def.'s Supp'g S.M.F. ¶ 108.) Gary Best, then acting regional manager, and Ron Hunt, then acting director of operations, also signed and approved plaintiff's performance evaluation in January 2015. (*Id.* ¶ 109.)

During the off-season, Farnham and Cuthbertson would discuss who would be returning on staff for the upcoming summer. (Pl.'s A.S.M.F. ¶ 26.) Cuthbertson and Farnham worked together consistently for the last eight years. (*Id.* ¶ 25.) Early in the following year, often in February, the Department sent letters to employees who are on seasonal layoff asking them to respond and indicate whether they intend to return to their jobs for the next season. Def.'s Supp'g S.M.F. ¶ 111.) As a seasonal employee, Plaintiff received such letters each year from 2008 to 2015. (*Id.* ¶ 112.) Generally, the letters did not include a proposed schedule for the upcoming season. (*See* Farnham Dep. 38.) Indeed, Farnham testified that over the years he may have sent out a proposed schedule with the letters to seasonal employees on one or two instances, but otherwise did not do so. (*Id.* at 40.)

In 2015, the first page of the letter plaintiff received, dated February 4, 2015, was identical in form to the letters she had received in prior years. (Def.'s Supp'g S.M.F. ¶ 119.) The second page of the letter, however, included a proposed schedule for the upcoming season and was sent only to plaintiff and another seasonal ranger who also was a teacher. (*Id.* ¶ 129; *see* Farnham Dep. 60-61).) The letter offered plaintiff the opportunity to return to work for the

2015 season, specified that her season would be 13 weeks long, would start on May 31, 2015, and end on August 29, 2015. (*Id.* ¶ 120.) The proposed schedule was not sent to other park employees on seasonal layoff. (*Id.*)

Farnham testified that the proposed schedules were sent in 2015 because the year before the other seasonal ranger who worked as a teacher suddenly said she would not be available for most of the first three weeks due to her teaching schedule. (*See* Farnham Dep. 41-42.) Usually Farnham would make a schedule accommodation for a week or possibly two where the employee worked some evenings, worked the weekends, and used some accumulated vacation time that resulted in an adjustment of only a day or two. (*Id.* at 42.) In 2014, however, the other seasonal ranger who worked as a teacher had to take three weeks off at the start of the season and only wanted to work a couple days during that time. (*Id.*) Farnham further testified that he believes he told the other seasonal ranger towards the end of the season that her schedule could become a problem. (*Id.*) He testified that the other seasonal ranger was aware of the problem because she had a friend who faced the same problem a few years ago. (*Id.* at 42-43.)

When plaintiff received the February 4, 2015 letter, she already knew she would not be able to work during school hours for at least the first two weeks of June 2015, and possibly longer, because the last day of school is determined based on the number of snow days occurring during the school year. (Def.'s S.M.F. ¶ 121.) Nevertheless, plaintiff's response to the letter indicated she would be able to work the full season as specified in the letter. (*Id.* ¶ 122.)

Plaintiff testified that she called Farnham in the spring of 2015 to tell him that while she indicated she could work the full season in the letter, "I can't obviously work it because I'm in school…." (Young Dep. 160.) Plaintiff testifies that she told Farnham she could probably work on "June 9th or beyond that" and that she was "willing to come in after seven hours and

4

work an eight-hour shift, I begged him, I'm willing to do whatever it takes…to keep this job." (*Id.*) Farnham asked plaintiff if she could work the schedule she was assigned, and plaintiff said no. (Def.'s Supp'g S.M.F. ¶ 144.)

Plaintiff testified that the beginning of the season required minimal rangers and that they were often looking for things to do. (Young Dep. 164-65.) On the other hand, she also testified that weekdays during daylight hours were the busiest times during the beginning of the season. (*Id.* at 163-64.)

In a letter dated May 28, 2015, Gary Best, the acting regional manager for the Department, stated that plaintiff informed Farnham she could not return for the full season as she had indicated in her initial response to the February 4, 2015 letter. (Ex. C to Best Aff.) He wrote:

> Due to operational considerations and your inability to meet the conditions of employed [sic] as laid out in the first letter, it is with regret that I advise you that I am separating your [sic] from your Park Ranger position due to your inability to work the entire season. Given the nature of the position, it is critical that the park position be occupied by an individual who can commit to the full season at this busy park.

(*Id.*)

At deposition, Farnham testified that he knew plaintiff was a schoolteacher and knew she wouldn't get out of school until at least mid-June. (Farnham Dep. 40-41.) He asserted that sometimes teachers would change their schedule if they know their job depends on it and they can make it work. (*Id.* at 41.) He testified that he has worked around teaching schedules in the past, but only to a point. (*Id.* at 41-42.) He explained that he sent out the proposed schedules in 2015 because of JM's behavior in 2014. (*Id.*) While he maintained that he was still willing to accommodate teachers in 2015, he asserted that when it starts impacting the park and the work that needs to be done, he had to make harder decisions. (*Id.* at 43.) Farnham asserts that in the spring of 2015, his only concerns about plaintiff returning to work regarded her scheduling

5

issues. (*Id.* at 79-81. He claims he had no animosity or ill will towards plaintiff because of her report about being harassed by the new employee. (*Id.*)

Cuthbertson, in turn, testified that in the past, Farnham "had been pretty accommodating to others who had jobs such as teachers[.]" (Cuthbertson Dep. 34.) He testified that for several years, Farnham had accommodated another teacher by allowing her to use her vacation time when her teaching and park ranger schedule conflicted. (*Id.*) Cuthbertson testified that one accommodation that had been used when employees were "on vacation and whatnot" was to work a morning shift and then the night shift so they could have the day free. (*See id.* at 40-41.) He further testified that he was not aware of any prior situations where Farnham would not work with or try to accommodate an employee's request for the schedule. (*Id.* at 41.) He opined that it was ridiculous that Farnham would not accommodate the plaintiff, because Farnham had changed employee work schedules at the last minute many times. (*Id.* at 43.)

*II. Analysis*

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the fact. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774.

Summary judgment is also appropriate if, looking at the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor,

no reasonable juror could find for the non-moving party. *Id.* ¶ 14, n. 3 (quoting *Scott v. Harris,* 550 U.S. 372, 377 (2007)). This is true "even when concepts such as motive or intent are at issue…if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Dyer. v. Dep't. of Transp.,* 2008 ME 106, ¶ 14, 951 A.2d 821 (quoting *Vives v. Fajardo,* 472 F.3d 19, 21 (1st Cir. 2007)); *Bouchard,* 661 A.2d at 1144-45 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986)) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted"). Accordingly, a "judgment as a matter of law in a defendant's favor is proper when any jury verdict for the plaintiff would be based on conjecture or speculation." *Stanton v. Univ. of Maine System,* 2001 ME 96, ¶ 6, 773 A.2d 1045.

A. <u>Defendant's Motion for Summary Judgment Against Count II of the Complaint</u>

The undisputed facts show that plaintiff did not file her claim of sexual harassment with the Maine Human Rights Commission within 300 days after the alleged conduct occurred. 5 M.R.S. § 4611.[1] This failure precludes plaintiff from recovering attorney fees, civil penal damages, or compensatory or punitive damages for the alleged harassment. 5 M.R.S. § 4622(1).

Because plaintiff does not appear to seek additional remedies pursuant to Count II and has not opposed defendant's Motion for Summary Judgment, the court grants summary judgment to defendant on Count II of plaintiff's complaint.

B. <u>Defendant's Motion for Summary Judgment Against Count III</u>

Defendant raises three primary arguments in support of its Motion for Summary Judgment against plaintiff's claim for retaliation under the MHRA. First, defendant argues plaintiff cannot establish a causal connection between her complaint of sexual harassment and

---

[1] Plaintiff filed a charge of discrimination with the Commission on July 15, 2015. Three hundred days prior to July 14, 2015 is September 18, 2014, which is after plaintiff's last day of work at the Park on August 23, 2014. (Def.'s Supp'g S.M.F. ¶¶ 2-3.)

7

the defendant's decision not to bring her back for the 2015 season because she was only terminated due to her inability to work her assigned shifts during the first few weeks of a thirteen-week season. Second, defendant argues that its actions were motivated by the legitimate, non-retaliatory reason of ensuring the Park had sufficient employees to work the entire season, including the early weeks that often conflicted with the schedules of teachers. Third, defendant argues that—pursuant to Count III—plaintiff cannot demonstrate that defendant's articulated reasons for terminating her were not true or, even if true, were not the actual cause of the employment decision.

Plaintiff responds that the record contains sufficient evidence from which a trier of fact could reasonably infer that plaintiff was terminated because of her sexual harassment complaint. She asserts that Farnham used the first opportunity he could to retaliate against plaintiff by breaking from established practice and sending her a set schedule in February 2015 that he knew would conflict with her teaching schedule. Furthermore, plaintiff contends that a trier of fact could reasonably infer that Farnham broke from the established practice of accommodating ranger schedules by refusing to do so for plaintiff and even though the beginning of the year is very slow and plaintiff offered to work alternate hours.

To establish a prima facie claim of retaliation under the MHRA, the employee must show: 1) that she engaged in statutorily protected activity; 2) her employer made an employment decision that adversely affected her; and 3) there was a causal link between the protected activity and the adverse employment action. *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 20, 824 A.2d 48. Temporal proximity of an employer's awareness of protected activity and the alleged retaliatory action may serve as the causal link for purposes of a prima facie case. *Daniels v. Narraguagus Bay Health Care Facility*, 2012 ME 80, ¶ 21, 45 A.3d 722. The burden then shifts to the employer to produce some probative evidence demonstrating a

nondiscriminatory reason for the adverse employment action. *Doyle*, 2003 ME 61, ¶ 20, 824 A.2d 48. Once that evidence has been offered, the burden moves back to the employee to persuade the factfinder that there was, in fact, a causal connection between the protected activity and the adverse employment action. *Id.* Summary judgment is inappropriate against a retaliation claim if a genuine factual dispute exists that is material to the outcome, "[e]ven when one party's version of the facts appears more credible and persuasive to the court[.]" *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 35, 969 A.2d 897.

As discussed at oral argument, the issue raised by defendant's Motion as to Counts I and III is whether the record reflects a genuine factual dispute as to whether there was a causal connection between plaintiff's complaint of sexual harassment and her subsequent termination.

Defendant has proffered a legitimate non-retaliatory reason for its action (*see* Farnham Dep. 40-43, 79-81), and has proffered evidence indicating a lack of animus towards plaintiff (Def.'s Supp'g S.M.F. ¶¶ 108-09), including Farnham's favorable evaluation of her and his offer of employment for the 2015 summer season.

On the other hand, Plaintiff has put forth some evidence that defendant, and Farnham in particular, had a practice of working to accommodate seasonal employees' schedules, and deviated from that practice in denying plaintiff's request for accommodation following her complaint. (*See* Farnham Dep. 38-41; Cuthbertson Dep. 34, 40-41.) She has also put forth objective evidence indicating that Farnham began acting differently towards plaintiff after her complaint of sexual harassment (Young Dep. 168-69), that Farnham refused to accommodate her scheduling request (Def.'s Supp'g S.M.F. ¶ 144; Young Dep. 160), and that the accommodation could have been made and had been made for another seasonal ranger who worked as a teacher in at least one prior instance (Young Dep. 164-65.)

9

This objective evidence, were it to be credited by the factfinder, could be sufficient to support the required finding of a causal link between plaintiff's sexual harassment complaint and the defendant's adverse action against plaintiff. At this stage of the case, it is not for the court to weigh the credibility of plaintiff's evidence against that of the defendant's evidence. Because the factfinder could reasonably infer, based on the summary judgment record, that defendant's decision not to rehire plaintiff was retaliatory based on her prior complaint, the defendant is not entitled to summary judgment on Count III of plaintiff's complaint. *See e.g. Watt*, 2009 ME 47, ¶ 35, 969 A.2d 897.

C. Defendant's Motion for Summary Judgment Against Count I

Count I of the complaint asserts a whistleblower claim under the MWPA. The analysis under the MWPA is slightly different from the MHRA retaliation claim because plaintiff need only make out a prima facie violation under the MWPA to survive summary judgment. *See Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 13, 126 A.3d 1145. Whatever practical difference this distinction may have in other cases, it presents none for the present Motion. The same genuine issue of material fact—namely whether there is a sufficient causal link between plaintiff's sexual harassment complaint, which was protected activity under the MWPA, and the later adverse action against her.

Accordingly, the court denies defendant's Motion for Summary Judgment on Count I for the same reasons.

*III. Conclusion*

It is hereby ORDERED AND ADJUDGED AS FOLLOWS:

Defendant's unopposed Motion for Summary Judgment directed to Count II of the complaint is granted. Judgment on Count II of the complaint is hereby granted to defendant.

Defendant's Motion for Summary Judgment as to Counts I and III of the complaint is denied.

10

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: June 5, 2017

_____
A.M. Horton
Justice, Superior Court