STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-12

ALISSA BEHNKE,

Plaintiff,

v.

CITY OF PORTLAND,

Defendant.

**ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant City of Portland's Motion for Summary Judgment on Plaintiff's complaint. Plaintiff Alissa Behnke filed this action for disability discrimination against the City of Portland alleging that she was terminated due to her disability. The City counters that Behnke was terminated for excessive absences.

**Background**

First, the Affidavit of Alissa Behnke is unsworn and therefore is inadmissible hearsay. Therefore the court will not consider assertions based only on the Behnke Affidavit as adequately supported, unless admitted by Defendant.

The summary judgment record reflects the following facts, which are undisputed unless otherwise noted:

Plaintiff has insomnia, chronic migraines, and fibromyalgia. Opp. S.M.F. ("OSMF") ¶¶ 13, 15. In March 2019, Alissa Behnke was hired to work as a Recreation Assistant at the Barron Center, a nursing, rehabilitation, and long-term care facility operated by the City of Portland. Supp.'g S.M.F. ("SMF") ¶¶ 1-2, 5. If a Recreation Assistant is late for work or misses work,

1

REC'D CUMB CLERKS OFC
FEB 8 '23 AM11:25

planned activities cannot go forward. ¶ 4.[1] The position required establishing, coordinating, and implementing individual and group activities for long-term care residents. ¶ 3. As part of the hiring process, Behnke filled out a form addressing disability and did not disclose any of her medical conditions which she alleges are disabilities; she also filled out a voluntary disclosure form that described disabilities under the ADA standard, and she indicated, "I do not have a disability." ¶¶ 6, 8.[2] Behnke also acknowledged by form that she received the City's disability policy. ¶ 7. Her pre-employment physical indicated she was able to perform all tasks associated with her position. ¶ 9. Behnke was initially hired as a probationary employee, and after six months her employment would have been governed by a union contract carrying several protections against discipline. ¶ 11. Her supervisor was Sarah Nute. ¶ 16.

Behnke missed three days in her first month of work and four days in the second month. ¶ 13. She attributed the first month's absences to an allergic reaction, which was not confirmed, and the second month's absences to pneumonia. ¶ 14. In her first two months, she was late to work five times. ¶ 15.[3] Nute met with Doug Gardner, interim administrator, and Tom Caiazzo, deputy human resources director, regarding Behnke's absences. ¶ 16. The group decided to address Behnke about the issue and that she may be terminated if she had another absence. ¶ 17.[4]

---

[1] Although Plaintiff denies this statement, her only citation is to her defective affidavit. Therefore the court deems the fact admitted.

[2] Behnke qualifies both of these facts, stating that the particular forms did not list the medical conditions that Behnke has.

[3] Plaintiff objects to this fact on the grounds that tardiness is not an issue in the case because Defendant asserts the termination was due to attendance rather than tardiness. The City argues that punctuality is an element of attendance. The court agrees that punctuality and tardiness are both relevant to the allegations here. Because Behnke did not deny or qualify the fact, or offer citations to dispute it, the court finds it admitted.

[4] Behnke denies SMF ¶¶ 16-17, but the City objects to those denials. The denial of SMF ¶ 16 is supported by a citation to OSMF ¶¶ 42-65. The court understands this to incorporate the supporting citations for those paragraphs of the Opposing Statement of Material Facts. The court agrees with the City that these citations are not adequate to support Behnke's denial of SMF ¶ 16. In addition, the court agrees with the City that the denial of SMF ¶ 17 does not actually contradict the fact asserted. Therefore, it considers these two facts admitted.

Nute verbally counselled Behnke that her attendance issues were unacceptable. ¶ 18.[5] In May 2019, Nute made a report about Behnke that stated, "Alissa struggles with physical games. She has stated it hurts her, that she 'cannot bend down' and has not implemented any physical activities for the residents." OSMF ¶ 51. Behnke had also complained about the physical part of her job over five times. ¶ 52.

From July to August, Behnke was late to work four additional times and called out on August 21, 2019 due to a migraine. SMF ¶ 21.[6] In an August 21 email to Doug Gardner, Nute wrote that Behnke "has not excelled working in this department and often complains about the physical part of the job." OSMF ¶ 84. That same day, Nute emailed Tom Caiazzo reminding him of their prior conversation regarding Behnke's absences and asking if they were "still on the same page with termination." ¶ 85.

On August 22, the City terminated Plaintiff. SMF ¶ 22.[7] At that point, she had missed over 71 hours of work over the five months she was employed and had been late twelve times. ¶ 23.[8] She had never requested an accommodation for her disabilities. ¶ 27. After her termination, Behnke filed a complaint with the Maine Human Rights Commission, which issued a right to sue letter. ¶ 24.

The parties dispute whether the City was on notice of Behnke's disabilities and the cause

---

[5] Although Plaintiff denies this statement, her citation to her defective affidavit is disregarded. The other record citation is to the Affidavit of her counsel, Guy Loranger, which states that the City did not produce any documents to show that this conversation occurred. The court finds that the Loranger Affidavit is not sufficient to support a denial of SMF ¶ 18. Therefore the court deems that fact admitted.

[6] Behnke makes the same objection as noted above on SMF ¶ 15, *supra* note 3. The court overrules the objection.

[7] In response to SMF ¶ 22 "the City terminated Behnke due to her attendance issues on August 22," Behnke states "Defendant terminated Behnke because of her disabilities." The record citation is to her OSMF ¶¶ 42-95, which the court understands to incorporate the record citations supporting those OSMF paragraphs. These include, in part, citations to the Nute Deposition and supporting exhibits that refer to Nute's statements about Behnke's limited physical mobility and pain. Therefore the court overrules the City's objection based on foundation for Behnke's denial of SMF ¶ 22. Paragraph 22 is only admitted to the extent it portrays the date and fact of termination, which is not in dispute.

[8] Behnke makes the same objection as above on SMF ¶ 15, *supra* note 3. The court overrules the objection.

of the termination – whether it was due to disability or attendance. Behnke claims that she informed her supervisor Sarah Nute about her disabilities in early May, by stating that she had insomnia, which was at that time untreated, and that the lack of proper rest irritated her chronic migraines and fibromyalgia. OSMF ¶¶ 48, 50. Behnke also claims that she kept Nute updated about her conditions. OSMF ¶ 49. The City claims that Behnke's only communication concerning the disabilities was a conversation with Nute in which Behnke stated that she was having medical issues caused by a temporary lack of medication due to switching physicians. SMF ¶ 28.

**Legal Standard**

A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits referred to in the Rule 56(h) statements show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). The court may not decide any issue of fact on a summary judgment motion. *Cottle Enters., Inc. v. Town of Farmington*, 1997 ME 78, ¶ 11, 693 A.2d 330. A factual dispute is material if it may affect the outcome of the litigation. *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773.

The facts must be considered in the light most favorable to the non-moving party, and the court will resolve disputes against the moving party. *Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 8, 823 A.2d 540. "A defendant who is the moving party has 'the initial burden to establish that there is no genuine dispute of fact and that the undisputed facts would entitle [the defendant] to judgment as a matter of law' at trial." *Oceanic Inn, Inc. v. Sloan's Cove, LLC,* 2016 ME 34, ¶ 26, 133 A.3d 1021 (quoting *Jennings v. MacLean*, 2015 ME 42, ¶ 5, 114 A.3d 66). The nonmoving plaintiff then must show a dispute of material fact and make out a prima facie case

4

for its claim. *Id.*

**Discussion**

Pursuant to the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4572, it is unlawful for any employer to discriminate against a qualified employee on the basis of a disability. Discrimination is disallowed "in regard to . . . [the] discharge of employees." 5 M.R.S. § 4572(2). The parties do not dispute that Behnke does have disabilities as contemplated by the MHRA or that Behnke was terminated.

In cases in which a claimant has no direct evidence of discrimination, the claimant must produce sufficient evidence to make out a prima facie case, which raises a presumption of unlawful discrimination.

> To establish a prima facie case of disability discrimination pursuant to the MHRA, the plaintiff has the burden of establishing the following: first, she suffers from a disability; second, she is otherwise qualified, with or without reasonable accommodations, and is able to perform the essential functions of the job; and third, she was adversely treated by the employer based in whole or in part on her disability.

*Doyle v. Dep't of Hum. Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48; *see also Carnicella v. Mercy Hosp.*, 2017 ME 161, ¶ 16, 168 A.3d 768. The defendant may rebut the presumption of discrimination by producing evidence of non-discriminatory, legitimate motivations for termination. If the defendant does so, the plaintiff must produce evidence sufficient to show that the employer's stated reason is a pretext for a discriminatory reason. *Me. Hum. Rts. Comm'n v. City of Auburn*, 408 A.2d 1253, 1261 (Me. 1979) (adopting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972)).

The City argues that Behnke was terminated because of ongoing attendance problems during her probationary period. It argues that Behnke's pattern of absences and late arrivals showed that she was not qualified for the job and that her substantial record of absences and

tardiness is undisputed. Further, it indicates that the record does not link the absences to Behnke's disabilities, that the City did not have notice of Behnke's disabilities, and that insufficient attendance is a legitimate, non-discriminatory basis for terminating Behnke's employment.

1. Behnke's Prima Facie Case

The parties do not dispute that Behnke suffers from several medical conditions or that those conditions are disabilities under the law. The court will therefore address only the remaining issues.

a. *Behnke's Qualification*

The analysis of whether an individual is qualified to perform a certain job "is generally broken into two steps: (1) whether the employee could perform the essential functions of the job; [and] (2) if not, whether any reasonable accommodation by the employer would enable him to perform those functions." *Carnicella*, 2017 ME 161, ¶ 19, 168 A.3d 768 (quoting *Ward v. Mass. Health Rsch. Inst., Inc.*, 209 F.3d 29, 33 (1st Cir. 2000).

Behnke points to her previous work experience and the pre-employment medical assessment that concluded she could perform the essential job functions. She also mentions that Nute had marked that Behnke fulfills or exceeds requirements in 12 of 13 categories in Behnke's job evaluation. Behnke also indicates that the City had no policy on what constituted excessive absences.

The parties agree that a medical provider found that Behnke could perform the essential functions of her job. The City asserts that it was only later, once Behnke's attendance issues were apparent, that it realized she was not qualified. *See Rios-Jimenez v. Sec'y of Veterans Affs.*, 520 F.3d 31, 42 (1st Cir. 2008) (citing *Waggoner v. Olin Corp.*, 169 F.3d 481, 485 (7th Cir. 1999)

6

("At the risk of stating the obvious, attendance is an essential function of any job.")); *see also* 5 M.R.S. § 4537-A(3) (The MHRA "does not prohibit an employer from discharging . . . an individual ... if the employer establishes that the individual, because of the physical or mental disability, is unable to perform job duties....").[9]

In *Rios-Jimenez*, a First Circuit case cited by the City, the claimant had missed a greater amount of work than is at issue here,[10] and a significant portion of that missed time was unexplained. 520 F.3d at 35. The absences clearly compromised the work – the Court found the plaintiff unqualified and indicated that the plaintiff, who was tasked with working on a diabetes study, "was unable to manage her workload, with the result being that the diabetes study was in a state of chaos that risked the study's future." *Id.* at 42.

The City also cites *Benson v. Walmart Stores E., L.P.*, for the proposition that attendance is an essential function of a position. 14 F.4th 13, 27 (1st Cir. 2021). In *Benson*, the First Circuit held that "regular attendance 'is an essential function of any job.'" *Id.* (quoting *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 33 (1st Cir. 2011)). In that case, the plaintiff, a greeter at Walmart, had been late, had left early, or had been absent from work twelve times over a three-month period. The Court ultimately did not make a conclusion as to whether she would have been qualified without a reasonable accommodation because it decided that the plaintiff had made out a prima facie case that she would be qualified with the reasonable accommodation she had proposed. *Id.* at 27-8.

The cases do not discuss exactly what constitutes "regular" attendance. *Rios-Jimenez* contained more extreme facts regarding work missed and cited impacts on the position's

---

[9] "Because the MHRA generally tracks federal anti-discrimination statutes, it is appropriate to look to federal precedent for guidance in interpreting the MHRA." *Doyle*, 2003 ME 61, ¶ 14 n.7, 824 A.2d 48 (alteration and quotation marks omitted).

[10] The decision does not state the time period over which work was missed.

7

purpose. On one hand, the First Circuit has concluded that failing to appear for work is failing to perform an essential job function, *id.* at 42, and the undisputed record shows that when a Recreation Assistant is late or does not show up, activities for the residents do not go forward. On the other hand, it is not clear how many absences are required over what period to constitute failure of an essential function of Behnke's former position. Surely at least a certain number is excusable. The record shows Behnke improved her attendance after being informed of the issue. The City argues that Caiazzo, Gardner, and Nute agreed that missing seven days in the first two months, plus another day at some unspecified point, and being late five times would render someone unqualified. However, the City did not have an applicable policy on attendance. On this record, a reasonable fact finder could conclude that Behnke has made a prima facie case that she was qualified without any reasonable accommodation.

### b. Termination on the Basis of Disability

Genuine disputes exist regarding the material facts surrounding why Behnke was terminated. Behnke asserts that she gave Nute specific notice of her various disabilities, listing the three of them by name but not calling them "disabilities." She claims that she explained that the conditions affect her ability to perform some aspects of the job, including physical activity. Although she acknowledges her record of attendance issues, she claims that the City's decision to terminate her was based on the effects of her disabilities on her job performance. As support, she points to the email from Nute to Gardner, which suggested termination after mentioning her limited physical mobility.[11] The court finds there is a genuine dispute about whether the City did know of her disabilities and that her argument satisfies her prima facie case on this point.

---

[11] Behnke points out that another email from Nute does not mention the suggestion that Nute speak with Behnke about her absences. She claims that this evidence shows Nute's discriminatory animus. Given the court's treatment of SMF ¶ 18 as admitted, the court disregards this argument.

8

2. The City's Legitimate, Non-Discriminatory Justification

The City argues that it terminated Behnke because of her faulty attendance record. It claims that Behnke's absences and late arrivals rendered her unqualified for the position. It asserts that it was not on notice that Behnke suffered from a disability and therefore it could not have terminated her based on her disabilities. Behnke acknowledges the City has satisfied its burden as to rebutting the presumption of discrimination.

3. Pretext

Behnke argues that triable issues of fact exist regarding whether the City's alleged motivation is merely a pretext for discrimination. "Pretext may be established by demonstrating 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.'" *Boyajian v. Starbucks Corp.*, 587 F. Supp. 2d 295, 304-05 (D. Me. 2008) (quoting *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000)). A plaintiff must not only attack an employer's justification, but "must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive....'" *Melendez v. Autogermana, Inc.*, 622 F.3d 46, 52 (1st Cir. 2010) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991)).

Behnke argues that the City's alleged reason for terminating her is a sham because she had informed Nute that she had a disability, Nute mentioned the symptoms of her fibromyalgia in her email to Gardner about termination, and Behnke's final absences were due to a migraine – a symptom of one of her disabilities.

Nute's email read, Alissa "left work early yesterday with a migraine and called out again

9

today. ... She has not excelled working in this department and often complains about the physical part of the job." OSMF ¶ 85. The court is persuaded that Nute's email is sufficient evidence of a pretext to overcome summary judgment, and it cannot find that judgment as a matter of law is warranted in the City's favor. Therefore, the court denies the City's motion.

**Conclusion**

The court finds that Plaintiff has made a prima facie showing of discrimination based on disability and that genuine issues of material fact exist such that judgment as a matter of law is not justified based on the undisputed record.

The entry is:

Defendant's Motion for Summary Judgment is DENIED.

The clerk may incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: 2/8/23                          Signed: _____

                                            Thomas. R. McKeon
                                            Justice, Maine Superior Court

10